JORDAN ETH (CA SBN 121617)
JEth@mofo.com
MICHAEL KOMOROWSKI (CA SBN 323517)
MKomorowski@mofo.com
CHRISTINA E. DIEROLF (CA SBN 335258)
CDierolf@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

*Attorneys for Defendant*
VISTAGEN THERAPEUTICS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN CESARIO, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>VISTAGEN THERAPEUTICS, INC., et al.,<br><br>Defendants. | Case No. 3:25-cv-01510-TLT<br><br>**DEFENDANT VISTAGEN THERAPEUTICS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' VERIFIED AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: December 9, 2025<br>Time: 2:00 p.m.<br>Place: Courtroom 9, 19th Floor<br>Judge: Hon. Trina L. Thompson |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on December 9, 2025, at 2:00 p.m., or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable Trina L. Thompson, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Courtroom 9, 19th Floor, Defendant Vistagen Therapeutics, Inc. ("Vistagen") will, and hereby does, move under the Federal Rules of Civil Procedure 8, 9(b), and 12(b)(6), as well as the Private Securities Litigation Reform Act ("Reform Act"), to dismiss without further leave to amend the Verified Amended Complaint (the "Complaint") filed on March 10, 2025. This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, Vistagen's Request for Consideration of Documents Incorporated into Complaint and for Judicial Notice, the Declaration of Michael Komorowski ("Komorowski Decl.") and attached exhibits ("Exs. 1-28"), and such other argument and materials as may be presented before this Motion is taken under submission.

## ISSUES TO BE DECIDED

1. Material falsity. Whether plaintiffs' claim under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") should be dismissed on the ground that plaintiffs have failed to plead particularized facts showing that Vistagen made a materially false or misleading statement.

2. Scienter. Whether plaintiffs' Section 10(b) claim should be dismissed on the additional, independent ground that plaintiffs have failed to plead particularized facts giving rise to a "strong inference" that Vistagen made any challenged statement with scienter.

3. Loss causation. Whether plaintiffs' Section 10(b) claim should be dismissed on the additional, independent ground that plaintiffs have failed to plead loss causation with particularity.

4. Standing under Section 10(b). Whether plaintiffs lack standing to bring a Section 10(b) claim for statements made after they last purchased Vistagen stock.

5. Statutory fraud, deceit, constructive fraud, concealment, and intentional misrepresentation. Whether plaintiffs' claims for statutory fraud, deceit, constructive fraud, concealment, and intentional misrepresentation (plaintiffs' "state law fraud claims") should be

dismissed for failure to plead with particularity any misrepresentation, any knowledge on the part of Vistagen of falsity, any intent to defraud, any reliance by the plaintiffs on a misrepresentation, and any damage caused by any alleged misrepresentation.

6. Civil conspiracy. Whether plaintiffs' claim for civil conspiracy should be dismissed for failure to plead with particularity any facts alleging the formation and operation of a conspiracy, any wrongful conduct in furtherance of a conspiracy, and any damages caused by the alleged wrongful conduct.

7. Gross negligence. Whether plaintiffs' claim for gross negligence should be dismissed for failure to plead any duty to the plaintiffs, any breach of that duty, and any damages caused by the alleged breach of duty.

8. California Corporations Code claims. Whether plaintiffs' claims arising under California Corporations Code Sections 25400 and 25401 should be dismissed for failure to plead with particularity any false statements that affect the market for any security or any intent to defraud. With respect to the claim arising under Section 25401, whether plaintiffs have failed to plead that they purchased Vistagen securities from Vistagen.

9. Dismissal with prejudice. Whether further amendment of the Complaint would be futile, and the Complaint should therefore be dismissed without further leave to amend.

# TABLE OF CONTENTS


Page

I. INTRODUCTION ... 1

II. BACKGROUND ... 2

A. The Plaintiffs. ... 2

B. Vistagen Conducts Multiple Clinical Trials of Fasedienol. ... 3

C. Vistagen's Securities Offerings. ... 6

D. Cesario's Demand Letter. ... 6

E. Plaintiffs Sue Vistagen, Its Officers, Directors, and Outside Advisors. ... 7

III. PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 10(B) (COUNT XI). ... 7

A. Plaintiffs Fail to Plead Any Material Misrepresentation or Omission. ... 8

B. Plaintiffs Fail to Plead Any Inference of Scienter, Let Alone a "Strong Inference." ... 14

C. Plaintiffs Fail to Plead Loss Causation. ... 16

D. Plaintiffs Lack Standing to Bring a Section 10(b) Claim for Statements Made After They Last Purchased Vistagen Stock. ... 18

IV. PLAINTIFFS FAIL TO STATE ANY STATE LAW CLAIMS. ... 18

A. Plaintiffs' State Law Fraud Claims Fail (Counts I – V). ... 18

B. Plaintiffs Fail to State a Civil Conspiracy Claim (Count VI). ... 20

C. Plaintiffs Fail to State a Claim for Gross Negligence (Count VIII). ... 20

D. Plaintiffs Fail to State a Claim Under the California Corporations Code (Counts IX – X). ... 22

V. THE COURT SHOULD DISMISS THE COMPLAINT WITHOUT FURTHER LEAVE TO AMEND. ... 23

VI. CONCLUSION ... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alicea v. GE Money Bank*,
2009 WL 1766703 (N.D. Cal. June 18, 2009) .......... 19

*Allen v. Beverly Hills*,
911 F.2d 367 (9th Cir. 1990).......... 24

*Amardeep Garments Indus. Pvt. Ltd. v. Cathay Bank*,
2012 WL 12886849 (C.D. Cal. Apr. 12, 2012) .......... 19

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 8

*Binder v. Gillespie*,
184 F.3d 1059 (9th Cir. 1999).......... 18

*Bodri v. GoPro, Inc.*,
252 F. Supp. 3d 912 (N.D. Cal. 2017) .......... 15

*Brody v. Transitional Hosps. Corp.*,
280 F.3d 997 (9th Cir. 2002).......... 9, 10

*Cal. Amplifier, Inc. v. RLI Ins. Co.*,
94 Cal. App. 4th 102 (2001).......... 22

*Cesario v. Bergquist*,
2006 WL 587598 (D.R.I. Mar. 10, 2006) .......... 2

*Cesario v. Biocept, Inc.*,
No. 23-cv-01803-WQH-BLM, 2025 WL 525120 (S.D. Cal. Feb. 18, 2025).......... 1, 3, 25

*In re: Cloudera, Inc. Sec. Litig.*,
121 F.4th 1180 (9th Cir. 2024).......... 8, 9

*Colyer v. AcelRx Pharms., Inc.*,
2015 WL 7566809 (N.D. Cal. Nov. 25, 2015).......... 13

*In re Cutera Sec. Litig.*,
610 F.3d 1103 (9th Cir. 2010).......... 14

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005) .......... 16, 24

*Espy v. J2 Glob., Inc.*,
99 F.4th 527 (9th Cir. 2024).......... 17

*Glass Egg Digital Media v. Gameloft, Inc.*,
2018 WL 500243 (N.D. Cal. Jan. 22, 2018) ........ 20

*Golden v. Qualcomm, Inc.*,
2023 WL 2530857 (N.D. Cal. Mar. 15, 2023) ........ 25

*Huang v. Avalanche Biotechnologies, Inc.*,
2016 WL 6524401 (N.D. Cal. Nov. 3, 2016) ........ 11

*Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*,
998 F.3d 397 (9th Cir. 2021) ........ 22

*Jackson v. Fischer*,
2015 WL 1143582 (N.D. Cal. Mar. 13, 2015) ........ 23

*Kamen v. Lindly*,
94 Cal. App. 4th 197 (2001) ........ 22

*Kelly v. Elec. Arts, Inc.*,
71 F. Supp. 3d 1061 (N.D. Cal. 2014) ........ 18

*Kovtun v. VIVUS, Inc.*,
2012 WL 4477647 (N.D. Cal. Sept. 27, 2012) ........ 13

*Lipton v. Pathogenesis Corp.*,
284 F.3d 1027 (9th Cir. 2002) ........ 15

*Lloyd v. CVB Fin. Corp.*,
811 F.3d 1200 (9th Cir. 2016) ........ 16

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
601 U.S. 257 (2024) ........ 10

*In re Metricom Sec. Litig.*,
2004 WL 966291 (N.D. Cal. Apr. 29, 2004) ........ 15

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
540 F.3d 1049 (9th Cir. 2008) ........ 8

*Mintel Learning Tech., Inc. v. Beijing Kaidi Educ.*,
2007 WL 2288329 (N.D. Cal. Aug. 9, 2007) ........ 20

*Mirkin v. Wasserman*,
5 Cal. 4th 1082 (1993) ........ 23

*Mohebbi v. Khazen*,
50 F. Supp. 3d 1234 (N.D. Cal. 2014) ........ 23

*Molina v. J.C. Penney Co., Inc.*,
2015 WL 183899 (N.D. Cal. Jan. 14, 2015) ........ 20, 21

*In re Nektar Therapeutics*,
2020 WL 3962004 (N.D. Cal. July 13, 2020) .......... 11

*In re Nektar Therapeutics Sec. Litig.*,
34 F.4th 828 (9th Cir. 2022) .......... 8

*Norfolk Cnty. Ret. Sys. v. Solazyme, Inc.*,
2016 WL 7475555 (N.D. Cal. Dec. 29, 2016) .......... 11

*Olajide v. Brown*,
2018 WL 3429077 (N.D. Cal. July 16, 2018) .......... 25

*Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
774 F.3d 598 (9th Cir. 2014) .......... 8

*Petersen v. TriplePoint Venture Growth BDC Corp.*,
2024 WL 5384678 (N.D. Cal. Aug. 7, 2024) .......... 25

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
2012 WL 1868874 (N.D. Cal. May 22, 2012) .......... 15

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
759 F.3d 1051 (9th Cir. 2014) .......... 12

*Prodanova v. H.C. Wainwright & Co., LLC*,
993 F.3d 1097 (9th Cir. 2021) .......... 15

*Reddy v. Litton Indus.*,
912 F.2d 291 (9th Cir. 1990) .......... 17

*Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*,
845 F.3d 1268 (9th Cir. 2017) .......... 12

*In re Rigel Pharms., Inc. Sec. Litig.*,
697 F.3d 869 (9th Cir. 2012) .......... 15

*Ronconi v. Larkin*,
253 F.3d 423 (9th Cir. 2001) .......... 8

*Sneed v. Talphera, Inc.*,
_ F.4th _, 2025 WL 2406424 (9th Cir. Aug. 20, 2025) .......... 10

*Subhani v. JPMorgan Chase Bank, Nat. Ass'n*,
2012 WL 1980416 (N.D. Cal. June 1, 2012) .......... 18, 19

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) .......... 14, 15

*TrustLabs, Inc. v. Jaiyong*,
2024 WL 1354486 (N.D. Cal. Mar. 30, 2024) .......... 23

*United States v. Corinthian Colls.*,
655 F.3d 984 (9th Cir. 2011) .......... 23

*Wanca v. Super Micro Computer, Inc.*,
2018 WL 3145649 (N.D. Cal. June 27, 2018) .......... 18

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
823 F.2d 1349 (9th Cir. 1987) .......... 8

*Wochos v. Tesla, Inc.*,
985 F.3d 1180 (9th Cir. 2021) .......... 13

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009) .......... 8

**Statutes**

15 U.S.C. § 78u-5 .......... 13, 14

Cal. Corporations Code § 25401 .......... 22

**Other Authorities**

81 Fed. Reg. 64982 (Sept. 21, 2016) .......... 5, 6, 10

Fed. R. Civ. P. 15(a)(2) .......... 23

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Plaintiffs, appearing pro se, allege that Vistagen, a public clinical-stage biopharmaceutical company, and its directors, officers, auditor, investment bank, and an analyst committed a multiyear fraud. According to plaintiffs, anyone and everyone joined a scheme to omit from public filings and on earnings calls for over four years allegedly material information about Phase 2 clinical trials of an investigational drug. Putting aside the sheer implausibility of its allegations, the Complaint fails for multiple, independent, and fundamental reasons: It does not plead the falsity of any statement. It does not plead anyone's scienter. It does not allege that the supposed fraud caused plaintiffs' loss when they sold Vistagen stock. It meets none of the requirements for pleading any complaint, let alone the strict requirements of Rule 9(b) and the Reform Act. Its makeweight state law claims derive from its federal Section 10(b) claim and fail for the same reasons. These and many other fatal flaws doom this action.

In many cases, courts understandably grant leniency to pro se plaintiffs. This should not be one of them. Plaintiffs have already brought their claims to Vistagen's attention, and Vistagen responded through its counsel at Latham & Watkins, rejecting those claims. So, plaintiffs sued 27 defendants, including Latham & Watkins, before trimming the current list to 18 defendants in an amended complaint. They seek $300 million in punitive damages to "put micro-cap CEOs, board members, bankers, and auditors on notice." (¶ 141.)[1] Plaintiff Cesario is a repeat litigant who sues companies, individuals, and even judges with whom he disagrees. He has a history of filing what one federal court termed "frivolous complaints and motions." He has been held in contempt of court numerous times. Undeterred, Cesario recently attacked another company and its directors, officers, and advisors in a strikingly similar way, even filing a Rule 11 motion against multiple defendants for supposedly misleading the court in their motions to dismiss. The court dismissed that complaint and denied the Rule 11 motion. *Cesario v. Biocept, Inc.*, No. 23-cv-01803-WQH-BLM, 2025 WL 525120, at *40 (S.D. Cal. Feb. 18, 2025). Now, he is suing Vistagen.

[1] All references to "¶ _" are to the paragraphs of the Complaint (ECF No. 4).

Whatever is motivating plaintiffs' incendiary and over-the-top allegations, this action will wind up costing Vistagen substantial time and money, distracting it from the development of products with the potential to meet critical healthcare needs. And it's a waste of judicial resources. The Complaint should be dismissed with prejudice.

## II. BACKGROUND

### A. The Plaintiffs.

Plaintiffs John Cesario and David Preka appear pro se and allege that they are investors in Vistagen. (ECF No. 4 ("AC") at pg. 1.) According to the Complaint, Cesario purchased Vistagen stock sometime between 2020 and 2022 and sold stock sometime between 2021 and 2022. (¶ 152.) Preka purchased Vistagen shares sometime between 2019 and 2023 and sold shares sometime between 2022 and 2023. (¶ 153.)

Cesario has a long and vexed history as a plaintiff. After losing a series of state court cases that restrained Cesario from contact with his neighbor and ex-husband of his partner, Cesario sued the holder of the restraining order in federal court alleging due process violations and fraud. *Cesario v. Bergquist*, 2006 WL 587598, at *1 (D.R.I. Mar. 10, 2006). The court dismissed the complaint and ordered that because of "the Plaintiffs' continual filing of frivolous complaints and motions, Plaintiffs are prohibited from filing in this Court any new actions dealing with the issues raised in either the instant case or their previous actions in this Court . . . without first obtaining the written permission of this Court." *Id.* With its order, the court included an appendix listing some of Cesario's previous conduct, including numerous instances in which he was found in contempt of court. *Id.* at *4-*6. For instance, Cesario was found in contempt after threatening a guardian ad litem for the restraining order holder's minor children and, on another occasion, was sentenced to 15 days in jail for violating a court order. *Id.* at *5. Cesario's litigation history includes a penchant for suing every possible defendant who he believes wronged him, including members of the judiciary and court staff. In a separate action, he sued "the State of Rhode Island, the Rhode Island Superior Court and two of its Justices, a Superior Court stenographer, and a divorce attorney representing" the restraining order holder. *Id.* at *1 n.1.

Before suing Vistagen and its officers, directors, and numerous outside advisors, including

its legal counsel, Latham & Watkins, in the present action, Cesario sued Biocept, Inc., a public molecular diagnostics company, and its officers, directors, and numerous outside advisors. The operative complaint in that action alleges that the defendants perpetrated a "stock manipulation COVID-19 scam" and that Cesario suffered losses when Biocept's stock price declined. *Biocept*, No. 23-cv-01803-WQH-BLM, ECF No. 164 at 5. Just like the Complaint here, the operative *Biocept* complaint brings claims under Section 10(b) of the Exchange Act, state law fraud claims, claims under the California Corporations Code, and claims for aiding and abetting and breach of fiduciary duty. *Id.* at 57-61. And just like the Complaint here, Cesario appears pro se in his individual capacity, not on behalf of a putative class, and seeks compensatory and punitive damages in the hundreds of millions. *Id.* at 61. After the defendants in *Biocept* filed a first round of motions to dismiss, Cesario filed a Rule 11 motion alleging that those motions to dismiss "rise to the level of Fraud on the Court." *Id.*, ECF No. 47 at 2. The court granted the motions to dismiss and denied the Rule 11 motion. *Biocept*, 2025 WL 525120, at *40. Now on a third amended complaint, the *Biocept* defendants recently briefed yet another round of motions to dismiss that complaint.

### B. Vistagen Conducts Multiple Clinical Trials of Fasedienol.

Vistagen is a public clinical stage biopharmaceutical company that is developing a new class of non-systemic neurocircuitry-focused intranasal product candidates for treatment of social anxiety disorder ("SAD"), major depressive disorder, vasomotor symptoms (hot flashes) due to menopause, and other conditions and disorders. (Ex. 22 at S-4.) Vistagen's most advanced intranasal drug candidate, fasedienol (PH94B), is in Phase 3 clinical development in the U.S. and has the potential to be the first drug candidate approved by the FDA for the acute treatment of SAD, a serious and life-threatening disorder affecting approximately 30 million Americans. (*Id.*; Ex. 27 at 4.) In 2019, the FDA granted Fast Track designation for development of fasedienol for the acute treatment of SAD. (Ex. 7 at 34.) For the past five years, Vistagen has run a late-stage clinical development program for fasedienol as part of the clinical and nonclinical studies required to support potential submission of a fasedienol New Drug Application ("NDA") to the FDA for the acute treatment of SAD. (*See, e.g.*, Ex. 22 at S-5-S-6.) Vistagen's Phase 3 clinical

development program for fasedienol remains ongoing. (Ex. 25 at 5.) Vistagen is a Nevada corporation. (Ex. 22 at S-1.)

Clinical trials involve human subjects and study the effects of investigational drugs under controlled conditions to test safety, efficacy, tolerability, and side effects, among other things. (Ex. 7 at 16-17.) Protocols for clinical trials must be submitted to the FDA before the clinical trial begins. (*Id.*) An independent Institutional Review Board must review and approve a study plan for each clinical trial site involved in a clinical development program, including informed consent forms and communications to study participants. (*Id.* at 15-16.) After successfully completing the required three sequential phases of clinical development, labeled Phases 1, 2, and 3, a sponsor may submit an NDA to the FDA for approval. (*Id.* at 17.)

By 2020, Phase 2 clinical trials for fasedienol, which was referred to at the time as "PH94B," for the acute treatment of SAD had been successfully completed. (Ex. 1 at 4; *see also* ¶¶ 18-19, 27-41.) In 2021, Vistagen initiated its Phase 3 clinical development program, which it named the "PALISADE Phase 3 program," to continue late-stage development of fasedienol for the acute treatment of SAD. (Ex. 8 at 5; ¶ 31.) The initial overlapping trials in the PALISADE program were labeled PALISADE-1, PALISADE-2, and PALISADE Open Label Study ("PALISADE OLS"). Subsequent and currently ongoing Phase 3 trials are labeled PALISADE-3 and PALISADE-4. (*See, e.g.*, Ex. 22 at S-5-S-6.) Vistagen publicly reported major milestones in its PALISADE program:

- May 2021: PALISADE-1 begins. (*Id.* at S-5.)
- October 2021: PALISADE-2 begins. (*Id.*)
- July 22, 2022: PALISADE-1 "did not meet its primary endpoint" and the results were "not consistent with prior positive results from Phase 2 trials of PH94B." (¶ 46; Ex. 14 at 4.)
- In July 2022, after receiving the top-line PALISADE-1 results, Vistagen paused ongoing enrollment in PALISADE-2 for business reasons and to allow independent biostatisticians to analyze data generated in PALISADE-2 to date. (Ex. 22 at S-5.)
- After analyzing the data, the independent biostatisticians recommended that Vistagen continue PALISADE-2 as planned. (*Id.*)

- Vistagen decided for business reasons to extend the enrollment pause until it could evaluate additional data, including the results of PALISADE OLS and two SAD public speaking studies conducted by peer companies, and discuss a primary efficacy endpoint with the FDA. After receiving positive results from PALISADE OLS, learning that the SAD public speaking studies did not meet their primary efficacy endpoints, and holding positive discussions with the FDA, Vistagen closed PALISADE-2. (*Id.*; ¶ 58.)

- On August 7, 2023, Vistagen reported "positive statistically-significant top-line results" from PALISADE-2. (Ex. 19 at 2; ¶ 61.)

- Vistagen launched the PALISADE-3 and PALISADE-4 Phase 3 trials in 2024. The trials are ongoing. (Ex. 25 at 5.)

- On June 2, 2025, Vistagen reported that it expects topline data from the PALISADE-3 Phase 3 trial in the fourth quarter of 2025 and topline data from the PALISADE-4 Phase 3 trial in the first half of 2026. (Ex. 27 at 4.)

The National Library of Medicine ("NLM"), an institute within the National Institutes of Health, hosts a website at clinicaltrials.gov with information about clinical trials. Sponsors of a clinical trial must submit a description of a clinical trial and its results to NLM. (Ex. 7 at 16.) NLM performs a "quality control" ("QC") review of submissions. (Ex. 28.) But unlike the FDA's work in approving NDAs, NLM's review is administrative, not scientific. (*Id.* at 1-2.) NLM does ***not*** "assess the appropriateness of the scientific design and analytic approach and cannot ensure that the information is 'truthful and non-misleading' under the relevant regulatory standards." (*Id.* at 2.) As the Complaint itself acknowledges and thereby refutes its central premise of liability, NLM's review does "not verify the scientific validity or relevance of the submitted information." (¶¶ 40, 60, quoting clinicaltrials.gov.) NLM submission requirements are not intended to satisfy FDA requirements for submission and approval of an NDA. And, as NLM's website explicitly warns, "posting of results information following the QC review process does not necessarily mean that the information complies with" FDA regulations. (Ex. 28 at 1.) The party submitting clinical trial results, not NLM staff, must ensure that a study follows applicable laws and regulations. (*Id.*)

NLM's "quality control review" looks for inconsistencies in the submitted summaries of clinical trial results that are akin to a proofreader's review of a text. *See* 81 Fed. Reg. 64982, 65116 (Sept. 21, 2016); Ex. 28 at 1. The regulation governing this review explains that it looks

for "impossible values, certain types of internally inconsistent data." 81 Fed. Reg. 64982, 65116. By way of example, NLM's review may identify "inadvertent, typographical errors . . . ; inadvertent omissions of data . . . ; inconsistencies in submitted data . . . ; and, incomplete entries that are insufficient to convey their intended meaning." *Id.* If, after review, NLM staff identifies any of these inconsistencies, the sponsor will receive an electronic notification with a request for correction. *Id.* at 65117. In that case, clinicaltrials.gov states that the results were "Returned After Quality Control Review." (*See, e.g.*, ¶¶ 40, 60 (screenshots).) Clinical trial results for fasedienol were submitted to clinicaltrials.gov. (¶¶ 36, 40, 82.) This website also posted notices that certain of these results were "Returned After Quality Control Review." ( ¶¶ 40, 60.)

### C. Vistagen's Securities Offerings.

As is typical for public clinical-stage biopharmaceutical companies, Vistagen has regularly raised capital from public markets while its nonclinical and clinical development programs are underway. On May 14, 2021, Vistagen disclosed that it had authorized Jefferies LLC ("Jefferies") to act as sales agent for an at-the-market ("ATM") offering program. (Ex. 5 at 2.) Under the ATM, Vistagen could direct Jefferies to sell up to $75 million of the company's stock. (*Id.*) Vistagen also regularly disclosed this ATM in subsequent public filings with the SEC. (*See, e.g.*, Ex. 7 at 78; Ex. 12 at 74, 79, 93, 105.) Beginning on August 7, 2023, per the terms of the preexisting ATM that had been publicly disclosed for over two years, Jefferies facilitated a sale of Vistagen's common stock that raised $36 million. (¶¶ 66-70.) On October 3, 2023, Vistagen filed a prospectus supplement for a $100 million follow-on offering. (¶ 78.)

### D. Cesario's Demand Letter.

On October 2, 2023, Cesario sent Vistagen's Board a purported demand letter. (¶ 84; ECF No. 1-4.) Cesario alleged that the company and its directors and officers had committed "perhaps criminal misconduct" by failing to disclose that its clinical trials were "not published on the clinicaltrials.gov website because of quality control problems." (ECF No. 1-4 at 8.) Cesario threatened to sue for punitive damages. (*Id.* at 1.) He threatened to file "a motion to freeze both Vistagen and Board members' assets." (*Id.*) Even though Cesario failed to meet the statutory threshold to pursue a shareholder demand under governing Nevada law, Vistagen's Board

requested that its counsel, Latham & Watkins, investigate Cesario's allegations and inform the Board of its findings. (ECF No. 1-5 at 2-3.) On November 27, 2023, Latham & Watkins provided a detailed response to Cesario, informing him that he misrepresented relevant facts and history and that, having considered his demands, the Board found them without merit. (*Id.* at 8.)

### E. Plaintiffs Sue Vistagen, Its Officers, Directors, and Outside Advisors.

On February 13, 2025, plaintiffs sued Vistagen and 26 other defendants, including Vistagen's officers, directors, investment bankers, auditor, and outside counsel. On March 10, 2025, plaintiffs filed an amended complaint ("the Complaint"), naming Vistagen and 17 of these original defendants. The Complaint generally alleges that Vistagen, its directors, certain of its officers, and its outside advisors misled the market about the results of Phase 2 clinical trials of PH94B (fasedienol) in SAD ahead of Vistagen's August 7, 2023 ATM offering. (¶¶ 1-6.) The Complaint alleges that these actions constitute an "illegal pump and dump" scheme. (¶ 5.) It seeks compensatory damages and punitive damages of $300 million. (AC at pgs. 58-59.)

Plaintiffs did not serve Vistagen with the summons and Complaint until August 13, 2025. (ECF No. 24.) On August 14, 2025, the plaintiffs filed a "motion for extension of time to serve the defendants." (ECF No. 13.) The "motion" did not explain why the plaintiffs had been unable to serve any defendant for six months following the filing of the initial complaint. Instead, the "motion" accused the defendants of "criminal activity" without basis. (*Id.* at 3.) It also purported to describe a "discovery plan," even though under the Reform Act all discovery is stayed until a complaint survives a motion to dismiss. (*Id.* at 4.) On August 15, 2025, the Court issued an order to show cause ordering plaintiffs to file a statement explaining why their Complaint should not be dismissed for failure to serve the summons and Complaint. (ECF No. 12.) On August 18, 2025, the Court discharged the order to show cause and set a deadline of September 19, 2025 for plaintiffs to serve the summons and Complaint. (ECF No. 20.) To Vistagen's knowledge, plaintiffs have not served any other defendant.

## III. PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 10(B) (COUNT XI).

"To plead a claim under Section 10(b) and Rule 10b-5, the plaintiff must allege: (1) a

material misrepresentation or omission; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation." *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 603 (9th Cir. 2014). "Each of these elements must be independently satisfied." *In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828, 835 (9th Cir. 2022). Plaintiffs must meet both the plausibility standard of Rule 8, requiring more than "conclusory" allegations, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and the heightened pleading standard of Rule 9(b), which requires Plaintiffs to "specify" each allegedly misleading statement and "what is false or misleading about the purportedly fraudulent statement, and why it is false," *In re: Cloudera, Inc. Sec. Litig.*, 121 F.4th 1180, 1187 (9th Cir. 2024). Securities fraud plaintiffs must meet the "more exacting pleading requirements" of the Reform Act, which requires that a complaint plead all elements of a Section 10(b) claim with particularity. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009); *Apollo Grp.*, 774 F.3d at 605. Plaintiffs have not met any of these requirements, and the Complaint should be dismissed.[2]

### A. Plaintiffs Fail to Plead Any Material Misrepresentation or Omission.

To plead a material misrepresentation, plaintiffs must plead with particularity "contemporaneous statements or conditions" showing the "false or misleading nature of the statements when made." *Ronconi v. Larkin*, 253 F.3d 423, 432 (9th Cir. 2001) (internal quotation marks and citation omitted). The Reform Act imposes by design "formidable pleading requirements to properly state a claim and avoid dismissal." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1055 (9th Cir. 2008). "A litany of alleged false statements, unaccompanied by the pleading of specific facts indicating why those statements were false, does not meet this standard." *Id.* at 1070.

That is exactly what plaintiffs have done here. As described below, the Complaint recites a litany of 29 statements relating to fasedienol (PH94B) clinical trials that it alleges are

[2] The Complaint at one point alleges that the defendants also violated "Section 17(a)(1)-(3) of the Securities Act." (AC at pg. 1.) There is no private right of action under Section 17(a). *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 823 F.2d 1349, 1358 (9th Cir. 1987).

misleading, but it omits any "specific facts" that would show why each statement is misleading.[3] Plaintiffs cannot rest on such conclusory allegations. Rather, they must show that each alleged misstatement "directly contradict[s] what the defendant knew at that time or omits material information." *Cloudera*, 121 F.4th at 1186 (internal quotation marks and citation omitted). An omission is material if it "affirmatively create[s] an impression of a state of affairs that differs in a material way from the one that actually exists." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). Plaintiffs have not alleged that for any misstatement.

**Vistagen's Statements Reporting Clinical Results Are Not Actionable.** Plaintiffs repeatedly allege that by omitting to mention an NLM staff decision to return summaries of fasedienol clinical trial results, Vistagen's public statements about those results were false. As an illustrative example, plaintiffs point to the following description of the PH94B Phase 2 results from Vistagen's Fiscal Year 2021 Form 10-K:

> In a peer-reviewed, published, randomized, double-blind, placebo-controlled Phase 2 clinical trial (n=91), with Dr. Michael Liebowitz, the creator of the Liebowitz Social Anxiety Scale (LSAS), as principal investigator, PH94B was significantly more effective than placebo in reducing both public-speaking (performance) anxiety (p=0.002) and social interaction anxiety (p=0.009) in laboratory-induced challenges of individuals with SAD, as assessed using patient-reported anxiety ratings on the Subjective Units of Distress Scale (SUDS) within 15 minutes of self-administration of a non-systemic 1.6 microgram dose of PH94B. (Stmt. 4; ¶ 27.)

According to the Complaint, this statement is "a half-truth and fraudulent" because Vistagen supposedly "concealed the fact that ClinicalTrials.gov rejected publishing the trial results after a quality control review." (¶ 28.) The Complaint identifies similar statements and applies the same allegation to them over and over. (*See* Stmts. 1, 2, 3, 4, 5, 6, 8, 9, 10, 11, 12, 15, 17, 18, 19, 20, 21, 24, 25, 27, 28, 29.)

This allegation is nonsense. It fails because Vistagen concealed nothing. NLM's website publicly posted its "return" of Vistagen's clinical trial results following its quality control review. The Complaint even highlights that fact by including screenshots from clinicaltrials.gov stating as much. (¶¶ 40, 60 (screenshots stating results were "Returned After Quality Control Review").)

[3] For the Court's convenience, these 29 alleged misstatements are collected in the chart in Appendix A. References to statement numbers correspond to the numbering of the statements in that chart.

These plaintiffs and the world at large had access to NLM's determinations. That fact alone eliminates plaintiffs' ability to plead that any of Vistagen's statements misled investors by omitting to mention NLM's "return" of clinical trial results. As the Ninth Circuit recently explained in affirming dismissal of a securities fraud complaint for failure to plead falsity, "we presume that a reasonable investor – who has money on the line – acts with care and seeks out relevant information." *Sneed v. Talphera, Inc.*, _ F.4th _, 2025 WL 2406424, at *4 (9th Cir. Aug. 20, 2025). Not only could the plaintiffs have sought out NLM's determinations, they concede that they are readily available on NLM's website. They even go so far as to draw arrows to NLM's determinations in the screenshots they include in their Complaint. (¶¶ 40, 60.)

Plaintiffs' allegations also fail for the separate and independent reason that an NLM staff determination has no bearing on clinical trial results. As the Complaint itself admits, NLM's website states that "NLM staff do not verify the scientific validity or relevance of the submitted information." (¶¶ 40, 60.) NLM's quality control review explicitly does ***not*** "assess the appropriateness of the scientific design and analytic approach and cannot ensure that the information is 'truthful and non-misleading' under the relevant regulatory standards." (Ex. 28 at 2.) Plaintiffs are wrong – and wrong based on the face of their own pleading – that any action by NLM staff could render any Vistagen statement about fasedienol clinical trial results misleading. The most basic inquiry of reading their own Complaint should have alerted plaintiffs to this fact.

Plaintiffs must do more than simply point to an alleged omission in Vistagen's statements. There is no freestanding liability for omissions under Section 10(b). *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 260 (2024). Rather, a plaintiff must show that an omission "affirmatively create[s] an impression of a state of affairs that differs in a material way from the one that actually exists." *Brody*, 280 F.3d at 1006. Plaintiffs point to no statement that satisfies this requirement.

Given the NLM staff's administrative role in reviewing submissions, NLM staff did not and could not "reject" clinical trial results. NLM staff may "return" summaries of those results via electronic notification with a request for correction. *See* 81 Fed. Reg. 64982, 65117. But that determination is irrelevant to the scientific accruacy of the clinical trial results. (Ex. 28 at 1.) It is

not factually or legally possible for an NLM quality control decision to render any clinical trial result reported by Vistagen – or any other company – misleading. NLM does not evaluate efficacy, safety, statistical significance, or any other substantive fact about clinical trial results.

Repeatedly, Plaintiffs challenge statements reporting on "the positive efficacy and safety results" from Phase 2 trials (Stmt. 5), "the reduction in anxiety observed in PH94B's Phase 2 clinical trials to date" (Stmt. 6), "a statistically significant peer-reviewed published Phase 2 study of PH94B in which researchers observed a rapid reduction in anxiety in individuals" (Stmt. 8), and "compelling top-line results from the Phase 3 PALISADE-2 trial [that] confirm what was seen in the Phase 2 studies in social anxiety disorder and highlight the potential for fasedienol" (Stmt. 19). Plaintiffs allege that NLM staff returning clinical trial results renders these and similar statements misleading. (*See, e.g.*, ¶¶ 30, 32, 39, 64.) But there is no contradiction between any of Vistagen's statements and NLM's administrative decisions. Plaintiffs fail to meet their burden in alleging that any NLM determination can have the misleading effect they claim. *See, e.g.*, *Huang v. Avalanche Biotechnologies, Inc.*, 2016 WL 6524401, at *6-*8 (N.D. Cal. Nov. 3, 2016) (dismissing complaint because plaintiffs fail to point to negative efficacy or safety data that would render statements about clinical trial results misleading). NLM's decisions simply do not matter with respect to the accuracy of clinical trial results.[4]

Courts in this district regularly dismiss coherent complaints against biotechnology companies that are alleged to have made similar statements regarding their products. *See, e.g.*, *In re Nektar Therapeutics*, 2020 WL 3962004, at *11 (N.D. Cal. July 13, 2020) (dismissing complaint for failure to plead falsity of any statement on the basis that trial results "were either so incomplete or so statistically flawed as to lack clinical significance"); *Norfolk Cnty. Ret. Sys. v. Solazyme, Inc.*, 2016 WL 7475555, at *3 (N.D. Cal. Dec. 29, 2016) (dismissing complaint because "facts purportedly inconsistent with Defendants' representations do not plausibly support

[4] Plaintiffs attempt to shoehorn a statement about Vistagen's ATM offering into their framework for alleging a material omission, but this allegation fails for all of the reasons stated above. Here, there is not even a subject matter nexus between the statement "we have sold 1,373,318 shares of our common stock for aggregate gross proceeds of approximately $16.1 million in accordance with the Sale Agreement under the Prospectus" and the allegation that Vistagen concealed an NLM staff determination. (Stmt. 14; ¶¶ 50-51; *see also* ¶¶ 67-68 (repeated).)

an inference that the representations were false or misleading"). Here, where the Complaint is incoherent and contradicts its own allegations, the Court should dismiss it with prejudice because it is impossible to plead any false or misleading statement under Section 10(b) on this set of facts. Plaintiffs have not alleged and never will be able to allege that any action taken by NLM staff renders Vistagen's statements about clinical trial results misleading. Plaintiffs' allegations are frivolous, as even a cursory reading of their Complaint shows.

**Vistagen's Optimistic and Aspirational Statements Are Not Actionable.** Seven of the alleged misstatements are non-actionable corporate optimism or statements of aspiration. (*See* Stmts. 7, 12, 15, 16, 19, 24, 26.) "Statements of mere corporate puffery, 'vague statements of optimism like "good," "well-regarded," or other feel good monikers,' are not actionable" under Section 10(b). *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1060 (9th Cir. 2014) (quoting *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111 (9th Cir. 2010)). Nor are "transparently aspirational" statements. *Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1278 (9th Cir. 2017). Statements such as "we are committed to becoming part of the solution" (Stmt. 7), "the initiation of this exploratory Phase 2A study in Adjustment Disorder with Anxiety is an exciting next step toward our goal" (Stmt. 7), "we remain committed to transforming the treatment landscape" (Stmt. 12), "[w]e are encouraged by the recommendation to continue PALISADE-2 to full enrollment as originally planned" (Stmt. 16), and "we know obviously what we achieved in PALISADE-2 is historic" (Stmt. 24) are all non-actionable statements of optimism or aspiration. All of these statements should be dismissed.

**Forward-Looking Statements Are Not Actionable.** Seven of the alleged misstatements are forward-looking and therefore protected by the Safe Harbor provision of the Reform Act. (See Stmts. 1, 5, 6, 7, 13, 24, 26.) The Safe Harbor protects statements regarding "(1) financial projections, (2) plans and objectives of management for future operations, (3) future economic performance, or (4) the assumptions underlying or related to any of these issues." *Intuitive Surgical*, 759 F.3d at 1058 (quoting *No. 84 Emp'r-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 936 (9th Cir. 2003)).

Vistagen's statement that it "now look[s] forward to Phase 2 development of PH94B for

adjustment [dis]order" (Stmt. 1) and statements regarding an "essential next step" or an "exciting next step" in the fasedienol clinical trial program (Stmt. 5, 6, 7) are non-actionable statements about future operations. Vistagen's projection that "[t]opline results of the exploratory Phase 2 clinical study [are] anticipated in Q1 2023" is an assumption related to the timing of the company's future operations and/or economic performance. (Stmt. 13.) CEO Shawn Singh's anticipation that Vistagen would submit the PALISADE-2 results to a journal for publication (Stmt. 24) and his statement that both PALISADE-3 and PALISADE-4 trials "will be run to completion" (Stmt. 26) are non-actionable plans and objectives for future operations. Courts in this district have dismissed nearly identical statements as forward-looking. Statements about a drug's prospects for regulatory approval "are assumptions related to the company's plan for its product" and therefore forward-looking. *Kovtun v. VIVUS, Inc.*, 2012 WL 4477647, at *12 (N.D. Cal. Sept. 27, 2012), *aff'd sub nom. Ingram v. VIVUS, Inc.*, 591 F. App'x 592 (9th Cir. 2015). Statements that "provide detail on the planned rollout of" a medical device are likewise forward-looking. *Colyer v. AcelRx Pharms., Inc.*, 2015 WL 7566809, at *10 (N.D. Cal. Nov. 25, 2015). The Court should reach the same result here.

These statements are inactionable under both prongs of the Safe Harbor. "[A] defendant will not be liable for a false or misleading statement if it is forward-looking and *either* is accompanied by cautionary language *or* is made without actual knowledge that it is false or misleading." *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1190 (9th Cir. 2021) (quoting *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1142 (9th Cir. 2017)); *see also* 15 U.S.C. § 78u-5(c)(1). The defendants identified all of these statements as forward-looking. Statements 1, 5, 6, and 13 appear in the company's SEC filings. All of those filings identified the statements as forward-looking statements and directed investors to a series of risk factors. (Ex. 1 at 5; Ex. 6 at 6; Ex. 8 at 6; Ex. 17 at 5.) Statements 24 and 26 are excerpted from transcripts of the company's quarterly earnings calls. A company representative prefaced each call with a caution that the company "will make forward-looking statements regarding our business" and referred investors to additional information about relevant risk factors in Vistagen's most recently filed Form 10-Q. (Ex. 24 at 4; Ex. 25 at 4.) When forward-looking statements are accompanied by meaningful

cautionary language, such as the language here, the statements are not actionable and "defendants' state of mind is not relevant." *Cutera*, 610 F.3d and 1113.

These statements are not actionable under the second prong of the Safe Harbor for the independent reason that the Complaint contains no facts alleging that any defendant had "actual knowledge" that the statements were false or misleading when made. 15 U.S.C. § 78u-5(c)(1); *see Cutera*, 610 F.3d at 1112. Plaintiffs fail to allege a strong inference of scienter much less the higher standard of "actual knowledge." *See* Sec. III.B, *infra*. All of these statements should be dismissed.[5]

### B. Plaintiffs Fail to Plead Any Inference of Scienter, Let Alone a "Strong Inference."

In addition to pleading a materially misleading statement, plaintiffs must plead "with particularity facts giving rise to a strong inference that the defendant acted with" scienter. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). Scienter is "a mental state embracing intent to deceive, manipulate, or defraud." *Id.* at 319 (citation omitted). Facts alleging scienter "must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id.* at 314. The Court evaluates allegations of scienter "holistically." *Id.* at 326. The Complaint does not come close to pleading scienter – with or without the required particularity. It rests on conclusory allegations that certain individuals at Vistagen "knew" that clinical trials "were rejected for publication" and that Vistagen's public filings omitted that information. (¶ 139.) Even if plaintiffs had adequately alleged that any statement was false by omitting to mention an NLM staff determination – they have not for the reasons stated above – mere access to that information fails to plead a strong inference of scienter. Everyone had access because NLM posted that fact on its website. (¶¶ 40, 60 (screenshots stating results were "Returned After Quality Control Review").) "The 'particularity' requirement of the [Reform Act] cannot be

[5] The Complaint also takes issue with Latham & Watkins' letter to Cesario, which it alleges "either intentionally or mistakenly misstates facts" (¶ 87) and "falsely" describes the PALISADE-2 clinical trial (¶ 88). But the passages of the letter that the Complaint highlights are either anodyne descriptions of fact ("the Board acknowledged receipt of your Letters," Stmt. 22) or summaries of regulatory guidelines (Stmt. 23). The Complaint never alleges any "specific facts" that would render these or any of the other statements false or misleading. For reasons stated below in Section III.D, Cesario also lacks standing to challenge any statement in this letter.

satisfied by a mere conclusory assertion that [d]efendants had 'access to, and use of the information.'" *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 2012 WL 1868874, at *19 (N.D. Cal. May 22, 2012), *aff'd*, 759 F.3d 1051 (9th Cir. 2014).

The Complaint's conclusory scienter allegations in fact make no sense. It alleges that routine public biopharmaceutical company stock offerings to raise capital for nonclinical and clinical development programs for drug candidates formed part of a "pump and dump" scheme. But there is nothing unusual about a clinical-stage (i.e., without an approved drug on the market that generates revenue) biopharmaceutical company needing to raise capital from time to time. Quite to the contrary. The ATM offering was disclosed in full compliance with SEC requirements in May 2021, long before the so-called August 7, 2023 "pump and dump" event. (Ex. 5 at 2.) The follow-on public offering in October 2023 was similarly disclosed to investors and in timely compliance with SEC requirements. (Ex. 22.) "Such routine business objectives, without more, cannot normally be alleged to be motivations for fraud." *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1038 (9th Cir. 2002). "As numerous courts have recognized, the desire to raise capital is a generic motive held by all companies, and is therefore insufficient to establish scienter." *In re Metricom Sec. Litig.*, 2004 WL 966291, at *35 (N.D. Cal. Apr. 29, 2004), *aff'd sub nom. Young v. Dreisbach*, 182 F. App'x 714 (9th Cir. 2006).

Taken "holistically," the Complaint fails to articulate a "cogent" theory of scienter that is "at least as compelling as any opposing inference." *Tellabs*, 551 U.S. at 326, 314. Complaints that lack "a plausible motive for the allegedly fraudulent action . . . face a substantial hurdle in establishing scienter." *Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1103 (9th Cir. 2021). The Ninth Circuit has confronted and rejected similar allegations against a clinical-stage biopharmaceutical company that allegedly released false clinical results while raising capital, holding that "allegations of routine corporate objectives such as the desire to obtain good financing and expand are not, without more, sufficient to allege scienter." *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 884 (9th Cir. 2012). As for any motive for an individual to commit fraud, the Complaint is silent. It does not allege any insider stock sales, for instance. A lack of insider stock sales undercuts an inference of scienter. *Id.* at 884-85; *see also Bodri v. GoPro,*

*Inc.*, 252 F. Supp. 3d 912, 933 (N.D. Cal. 2017) (holding scienter not alleged where "no allegation of improper stock sales by any individual defendant during the class period").

Plaintiffs fail to show that they can overcome the "substantial hurdle" to pleading scienter with particularity in the absence of any motive to commit fraud. It is impossible for them to do so on the facts that they allege, because the critical piece of information that was allegedly hidden from investors – an NLM staff determination – was public all along. (*See* ¶¶ 40, 60.) Plaintiffs do not explain how Vistagen could have intended to conceal something that was publicly available to themselves and other investors. The Court should dismiss the Complaint on the independent grounds that it fails to plead scienter and should deny leave to amend because plaintiffs cannot plead around this fundamental fact.

**C. Plaintiffs Fail to Plead Loss Causation.**

Plaintiffs also fail to allege loss causation, the required showing that the alleged fraud, and not some other factor, caused their loss. It is insufficient as a matter of law to plead that a plaintiff purchased stock at an artificially inflated price, because "at the moment the transaction takes place, the plaintiff has suffered no loss." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005). Rather, a plaintiff must plead that the "share price fell significantly after the truth became known." *Id.* at 347. The Complaint does not even attempt to lay out this required sequence coherently. It fails to point to any disclosure of the "truth" that revealed the alleged fraud and caused the stock price to decline. "The burden of pleading loss causation is typically satisfied by allegations that the defendant revealed the truth through 'corrective disclosures' which 'caused the company's stock price to drop and investors to lose money.'" *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1209 (9th Cir. 2016) (quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 264 (2014)). To the extent the Complaint's theory of causation is intelligible, Plaintiffs imply that the August 7, 2023 "pump and dump" event led to their investment losses. (¶¶ 61-74.) There are numerous problems with their theory, any one of which is fatal.

Most fundamentally, plaintiffs allege that Vistagen's stock price declined during the August 2023 ATM offering, but they fail to identify any revelation of the alleged fraud at that time. (¶ 67.) Just the opposite: the Complaint alleges that Vistagen released positive news about

a clinical trial on August 7, 2023 ahead of the ATM offering and concealed the "truth" of NLM's return of results. (¶¶ 61-64.) That allegation pleads fraud, not a revelation of fraud. It is not a corrective disclosure of anything. In fact, it is not possible for plaintiffs to plead a corrective disclosure on the facts that they have alleged. The so-called "truth" of an NLM staff determination could not be "revealed" because it was always public. (¶¶ 40, 60 (providing NLM website screenshots).) Plaintiffs fail to plead that this information was not already reflected in Vistagen's stock price to the extent it had any relevance to investors at all. *See Espy v. J2 Glob., Inc.*, 99 F.4th 527, 542 (9th Cir. 2024) (affirming dismissal on loss causation grounds where plaintiff failed to plead that publicly available information that required no expertise beyond a typical market participant's was not already reflected in company's stock price).

Separately, plaintiffs cannot allege that their story of fraud – Vistagen's concealment of the NLM staff determination – caused their loss, because they do not allege that they even owned stock on August 7, 2023. Cesario "sold stock between 2021 and 2022" and Preka "has actual losses from stock sales . . . between 2022 and 2023." (¶¶ 152-53.) According to the Complaint, Vistagen continued to misrepresent its clinical trials during the time that the plaintiffs allegedly sold stock. The Complaint does not and cannot connect these sales to any revelation of the alleged fraud. The Complaint does allege that Commodore Capital suffered losses in connection with a stock purchase at this time (¶¶ 75-76), but Commodore is not a plaintiff.

The Complaint not only fails to plead loss causation, but it shows that plaintiffs cannot plead loss causation on this set of facts. This fatal defect cannot be cured with any amendment. The facts that plaintiffs allege here do not support any coherent account of loss causation. To replead loss causation, they would need to contradict the facts pleaded in the Complaint, for instance, by alleging that a disclosure is "corrective" when they have pleaded that the disclosure concealed material information from investors. When amending a complaint, a plaintiff must do so "without contradicting any of the allegations of his original complaint." *Reddy v. Litton Indus.*, 912 F.2d 291, 296 (9th Cir. 1990). Plaintiffs cannot do so. The Section 10(b) claim should therefore be dismissed with prejudice because any amendment would be futile.

### D. Plaintiffs Lack Standing to Bring a Section 10(b) Claim for Statements Made After They Last Purchased Vistagen Stock.

Plaintiffs lack standing to sue under Section 10(b) for alleged misstatements that occurred after their last purchase of Vistagen stock. "As a matter of law, conduct actionable under Rule 10b-5 must occur before investors purchase the securities." *Binder v. Gillespie*, 184 F.3d 1059, 1066 (9th Cir. 1999) (internal quotation marks and citation omitted). The plaintiffs' trading history in Vistagen stock is not entirely clear, because the Complaint does not attach specific dates to the plaintiffs' purchases and sales of Vistagen stock. The Complaint does allege that Cesario purchased Vistagen stock sometime "[b]etween 2020 and 2022" (¶ 152) and Preka purchased Vistagen stock sometime "between 2019 and 2023" (¶ 153). Accordingly, Cesario lacks standing to challenge any statement made after his last purchase in 2022 and Preka lacks standing to challenge any statement made after his last purchase in 2023. At a minimum, neither plaintiff has standing to challenge Statements 24-29, and Cesario additionally lacks standing to challenge Statements 13-14, 17-23. Courts regularly dismiss allegations arising from conduct that occurs after a plaintiff's final purchase. *See, e.g.*, *Wanca v. Super Micro Computer, Inc.*, 2018 WL 3145649, at *7 (N.D. Cal. June 27, 2018) (dismissing complaint and explaining "it is not enough to allege these statements induced Plaintiff to retain the [defendant's] stock he previously purchased to the extent the [complaint] implies such a theory"); *Kelly v. Elec. Arts, Inc.*, 71 F. Supp. 3d 1061, 1069 (N.D. Cal. 2014) ("Statements issued after a plaintiff's purchase of stock cannot form the basis of a Section 10(b) or Rule 10b-5 claim because the statements could not have affected the plaintiff's decision to purchase stock.").

## IV. PLAINTIFFS FAIL TO STATE ANY STATE LAW CLAIMS.

### A. Plaintiffs' State Law Fraud Claims Fail (Counts I – V).

Plaintiffs fail to plead state law (1) fraud (Count I), (2) deceit (Count II), (3) constructive fraud (Count III), (4) concealment (Count IV), and (5) intentional misrepresentation (Count V) for the same reasons that they fail to plead a Section 10(b) claim. State law fraud claims must be pleaded with particularity under Rule 9(b). *Subhani v. JPMorgan Chase Bank, Nat. Ass'n*, 2012 WL 1980416, at *10 (N.D. Cal. June 1, 2012). "The elements of fraud, which gives rise to the

tort action for deceit, are (1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity; (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Subhani*, at *9 (citing *Small v. Fritz Cos., Inc.*, 30 Cal. 4th 167, 173 (2003)). "The elements of a constructive fraud claim are: (1) a fiduciary or confidential relationship; (2) nondisclosure; (3) intent to deceive; and (4) reliance and resulting injury (i.e., causation)." *Id.* at *10 (citing Cal. Civ. Code § 1573). "A California claim for concealment is equivalent to one for fraud. In fact, the California civil jury instructions collapse the two claims." *Alicea v. GE Money Bank*, 2009 WL 1766703, at *6 (N.D. Cal. June 18, 2009). "[T]o establish a claim of deceit based on intentional misrepresentation, the plaintiff must prove seven essential elements: (1) the defendant represented to the plaintiff that an important fact was true; (2) that representation was false; (3) the defendant knew that the representation was false when the defendant made it, or the defendant made the representation recklessly and without regard for its truth; (4) the defendant intended that the plaintiff rely on the representation; (5) the plaintiff reasonably relied on the representation; (6) the plaintiff was harmed; and (7) the plaintiff's reliance on the defendant's representation was a substantial factor in causing that harm to the plaintiff." *Id.* (citing *Manderville v. PCG & S Grp., Inc.*, 146 Cal. App. 4th 1486, 1498 (2007)). Because these claims contain overlapping elements, courts frequently address them together. *See, e.g.*, *Amardeep Garments Indus. Pvt. Ltd. v. Cathay Bank*, 2012 WL 12886849, at *4 (C.D. Cal. Apr. 12, 2012) (addressing fraud, deceit, concealment, and intentional misrepresentation together).

As discussed above, plaintiffs' allegations are conclusory. They do not meet the pleading standard under Rule 8, let alone the "particularity" requirement under Rule 9(b). Again, plaintiffs fail to plead that any statement was false or misleading when made. They fail to plead that any defendant knew any statement was false or that any defendant intended to defraud the plaintiffs. They fail to plead that they relied on any statement or that they were damaged by the alleged fraud. The Complaint does not even allege that either plaintiff held Vistagen stock on August 7, 2023. Plaintiffs' state law fraud claims should all be dismissed.

**B. Plaintiffs Fail to State a Civil Conspiracy Claim (Count VI).**

Plaintiffs' civil conspiracy claim likewise should be dismissed. "The elements of a civil conspiracy are (1) the formation and operation of a conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from the wrongful conduct." *Mintel Learning Tech., Inc. v. Beijing Kaidi Educ.*, 2007 WL 2288329, at *4 (N.D. Cal. Aug. 9, 2007) (citing *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 511 (1994)). "Civil conspiracy is not a separate and distinct cause of action under California law." *Id.* Rather, as plaintiffs acknowledge in their Complaint, it is "a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its preparation." (AC at pg. 52, quoting *Applied Equip. Corp.*, 7 Cal. 4th at 510-11.) Where, as here, a plaintiff alleges a conspiracy to commit fraud, the heightened pleading standard under Rule 9(b) applies. *Mintel*, 2007 WL 2288329, at *4.

Plaintiffs plead none of these elements, let alone with particularity. The complaint contains nothing about how the alleged conspiracy formed, how it operated, or the particulars of the "wrongful conduct." As explained above, the Complaint is entirely deficient in pleading damages caused by the defendants' fraud. It lacks even conclusory allegations showing a "common plan or design." Where a Complaint merely pleaded that one party was "acting on behalf of [d]efendants" and "concocted a scheme" with other parties, the court dismissed the civil conspiracy claim as "conclusory and collectively pleaded." *Glass Egg Digital Media v. Gameloft, Inc.*, 2018 WL 500243, at *3 (N.D. Cal. Jan. 22, 2018). Plaintiffs' Complaint does not even contain that much. This Court should similarly dismiss the civil conspiracy claim.

**C. Plaintiffs Fail to State a Claim for Gross Negligence (Count VIII).**

"[G]ross negligence is pleaded by alleging the traditional elements of negligence: duty, breach, causation, and damages. However, to set forth a claim for 'gross negligence' the plaintiff must allege extreme conduct on the part of the defendant." *Molina v. J.C. Penney Co., Inc.*, 2015 WL 183899, at *2 (N.D. Cal. Jan. 14, 2015) (quoting *Frittelli, Inc. v. 350 N. Canon Drive, LP*, 202 Cal. App. 4th 35, 52 (2011)). "To constitute gross negligence, misconduct must demonstrate either a 'want of even scant care' or 'an extreme departure from the ordinary standard of

conduct.'" *Id.* (quoting *City of Santa Barbara v. Super. Ct.*, 41 Cal. 4th 747, 754 (2007)). Once again, plaintiffs fail to allege any of the elements of the claim, let alone that the alleged conduct represented an "extreme departure" from any standard.

Plaintiffs' gross negligence claim appears to be based on Vistagen's initiation of fasedienol clinical trials during the COVID-19 pandemic. (¶¶ 3, 170.) That assertion is nonsensical. For one, plaintiffs do not explain how initiating a clinical trial during a pandemic breached any duty to anyone. They do not allege that the FDA halted clinical trials during the pandemic or that investors were unaware that fasedienol clinical trials were underway at the same time as the virus was circulating. Nor could they. Vistagen, along with hundreds of other public companies at the time, included a lengthy COVID-19 risk factor disclosure in its public filings. Its Fiscal Year 2020 Form 10-K, for instance, warned investors about COVID-19-related business impacts: "We have faced, and may continue to face, delays and other disruptions to our ongoing development programs for PH94B, PH10 and AV-101 due to the ongoing COVID-19 pandemic. In addition, regulatory oversight and actions regarding our products may be disrupted or delayed in regions impacted by COVID-19, including the United States and elsewhere, which may impact review and approval timelines for products in development." (Ex. 7 at 32.) Plaintiffs do not allege that Vistagen departed from any standards of care in the biopharmaceutical industry during the pandemic. Nor do Plaintiffs even attempt to explain how this supposed gross negligence caused any of their losses.

Apart from all of that, plaintiffs' gross negligence claim is disconnected from the allegations in the rest of the Complaint. Plaintiffs allege throughout the Complaint that Vistagen failed to disclose an NLM staff determination regarding publication of clincal trials results on NLM's website. Their gross negligence claim instead appears to be based on responses that Vistagen's CEO delivered to an analyst's questions on the company's November 7, 2024 earnings call. (¶ 171.) These responses relate to the conditions of the PALISADE-3 trial in contrast to earlier trials that were run with COVID-19-related protocols in place. (Stmt. 29.) Plaintiffs do not explain how the statements on this call were false or misleading in any way. Nor do they explain how they caused any of their losses – they allege they sold stock long before this time.

(¶¶ 152-53.) As with everything else in the Complaint, this claim has no facts to support it. It, too, should be dismissed.

### D. Plaintiffs Fail to State a Claim Under the California Corporations Code (Counts IX – X).

Plaintiffs' state law securities claims fail for the same reasons that their Section 10(b) claim fails. Under California Corporations Code Section 25400, it is unlawful "to make false statements or engage in specified fraudulent transactions which affect the market for a security when done for the purpose of inducing purchase or sale of the security or raising or depressing the price of the security." *Kamen v. Lindly*, 94 Cal. App. 4th 197, 202 (2001). The statute "prohibits market manipulation." *Id.* Plaintiffs must also plead this claim with particularity. *See Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*, 998 F.3d 397, 404 (9th Cir. 2021) ("Rule 9(b)'s particularity requirement applies to state law causes of action relating to fraud when asserted in federal court."). For the reasons stated above, plaintiffs' failure to plead a claim under Section 10(b) forecloses their Section 25400 claim. *Id.* at 405 (recognizing that the statute is "derived from substantially identical language in the Securities Exchange Act").

Additionally, a plaintiff must plead that a defendant had "a specific intent to affect the price of a security in order to induce its purchase or sale." *Cal. Amplifier, Inc. v. RLI Ins. Co.*, 94 Cal. App. 4th 102, 110 (2001). This "high level of scienter" means that "[o]nly persons who willfully, not merely recklessly" violate Section 25400 may be liable. *Id.* at 112. Plaintiffs have pleaded none of that. They have not alleged the scienter of any defendant let alone that any defendant specifically intended to affect the price of Vistagen stock. Conclusory allegations that the defendants engaged in a "pump and dump" scheme do not state a claim.

Section 25401 makes it "unlawful for any person to offer or sell a security in this state, or to buy or offer to buy a security in this state, by means of any written or oral communication that includes an untrue statement of a material fact or omits to state a material fact necessary to make the statements made, in the light of the circumstances under which the statements were made, not misleading." Plaintiffs' Section 25401 claim likewise fails for the same reasons. "Plaintiff's inability to state a claim for fraud under Section 10b-5 is also fatal to his § 25401 claims,"

because both claims require the "same factual inquiry." *Mohebbi v. Khazen*, 50 F. Supp. 3d 1234, 1252 (N.D. Cal. 2014); *see also TrustLabs, Inc. v. Jaiyong*, 2024 WL 1354486, at *17 (N.D. Cal. Mar. 30, 2024) (same).

Plaintiffs' Section 25401 claim fails for the additional, independent reason that they have not pleaded that they purchased Vistagen securities from any defendant. Only the "actual seller or purchaser of the security" may be liable. *Jackson v. Fischer*, 2015 WL 1143582, at *20 (N.D. Cal. Mar. 13, 2015) (citing *Apollo Cap. Fund LLC v. Roth Cap. Partners, LLC*, 158 Cal. App. 4th 226, 253-54 (2007)); *see also Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1104 (1993) (observing privity of contract required under Section 25401). Cesario pleads only that he "wired Vistagen $159,000 to convert warrants in 2021," not that he was in privity with any defendant. (¶ 152.) Preka does not plead that he purchased Vistagen stock from any defendant.[6]

## V. THE COURT SHOULD DISMISS THE COMPLAINT WITHOUT FURTHER LEAVE TO AMEND.

A court should grant leave to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). This is not such a case. Leave to amend is only appropriate "if the deficiencies can be cured with additional allegations that are consistent with the challenged pleading and that do not contradict the allegations in the original complaint." *United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011) (internal quotation marks and citation omitted). Plaintiffs' theory of liability fails according to the facts that they themselves allege. They therefore cannot cure the numerous deficiencies in their Complaint. There is no basis to challenge any of Vistagen's announcements about its clinical trial results. Plaintiffs wrongly assert that a NLM staff determination renders Vistagen's public statements about its clinical trials misleading. That is impossible. As the plaintiffs themselves concede, "NLM staff do not verify the scientific validity or relevance of the submitted information." (¶¶ 40, 60.) In any event, these staff determinations are public. (*Id.* (providing screenshots).) Plaintiffs do not allege that any "truth" emerged in connection with the August 7, 2023 ATM offering. They have not even alleged that they held

[6] The Complaint also brings claims for aiding and abetting (Count VII) and breach of fiduciary duty (Count XII) against other defendants. Because these claims are not alleged against Vistagen, Vistagen does not address them in this Motion.

Vistagen stock on that date. Plaintiffs have no way to amend the Complaint that could survive these numerous deficiencies, any one of which is fatal. They cannot plead a materially misleading statement, scienter, or loss causation to sustain a Section 10(b) claim. Their state law claims derive from the same facts and fail for the same reasons.

Courts are understandably cautious about ensuring that pro se plaintiffs are afforded every reasonable opportunity to prosecute their case. Plaintiffs, however, have already taken one opportunity to amend their Complaint. "The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Allen v. Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (internal quotation marks and citation omitted). Then, they sat on it, failing to serve any defendant until August 13, 2025, six months after filing their initial complaint and five months after filing their amended complaint. (ECF No. 24.) Even then, they chose to serve a single defendant of the 18 they sued. Once they did serve the summons and Complaint on Vistagen, plaintiffs submitted a statement to the Court asking for more time but failing to provide any reason why they had not begun to attempt service earlier. Rather than explain their inaction, they took that opportunity to take shots at Vistagen and other defendants, accusing them of "criminal activity." (ECF No. 13 at 3.) The plaintiffs are two individuals, proceeding on behalf of themselves only – not a class of investors, as is typical in securities fraud actions – who seek a payday for themselves alone. They ask for an absurd $300 million in "punitive damages." They claim they lost money on their investment in Vistagen, and now they want Vistagen and others to reimburse them for their investment losses. The securities laws exist "not to provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause." *Dura Pharms.*, 544 U.S. at 345. There are no misrepresentations here, and the plaintiffs have not seriously tried to plead them. Nor is there any scienter. Nor loss causation.

The plaintiffs' hyperbolic and inflammatory rhetoric betrays their motives. If they cannot achieve a payout, they want to damage Vistagen and a host of individual defendants at all costs. This Court and the defendants have far better uses of their time and resources than to indulge a personal vendetta. Cesario's history as a repeat litigant who files "frivolous complaints and

motions" is instructive. He has already exhibited that behavior here, filing two complaints and a "motion for extension of time" that contain a barely intelligible narrative of grievance and baseless accusations of criminal activity. And this comes despite his history as a litigant, most recently in the *Biocept* action, in which he received instruction from that court on amending a similar complaint earlier this year. *See Biocept*, 2025 WL 525120, at *38. Rather than attempt to file a passable complaint here, plaintiffs take every opportunity to smear the company, its officers and directors, and even its outside advisors under the guise of litigation privilege.

The Court need not entertain these antics. The Complaint should be dismissed with prejudice. *See, e.g.*, *Petersen v. TriplePoint Venture Growth BDC Corp.*, 2024 WL 5384678, at *13 (N.D. Cal. Aug. 7, 2024) (dismissing with prejudice first amended complaint alleging securities fraud "since amendment would be futile"); *Golden v. Qualcomm, Inc.*, 2023 WL 2530857, at *3 (N.D. Cal. Mar. 15, 2023) (dismissing without leave to amend after the first round motion to dismiss because "Plaintiff has repeatedly shown that he is not capable of pleading these sprawling and repetitive claims against [defendant] in a manner that satisfies the basic requirements of federal pleading"), *aff'd*, 2023 WL 6561044 (Fed. Cir. Oct. 10, 2023), *cert. denied*, 144 S. Ct. 1059 (2024), *reh'g denied*, 144 S. Ct. 2553 (2024); *Olajide v. Brown*, 2018 WL 3429077, at *2 (N.D. Cal. July 16, 2018) ("Although leave to amend is to be liberally granted, [the plaintiff's] complaint is so fanciful that a dismissal with prejudice is warranted.").

If plaintiffs are granted leave to amend, the parties and the Court can look forward to years more of the same. Plaintiffs have played this game before. They should not be allowed to continue to waste the parties' and the Court's resources with years of frivolous motion practice.

## VI. CONCLUSION

For the foregoing reasons, plaintiffs' Complaint should be dismissed in its entirety with prejudice.

DATED: September 3, 2025

*/s/ Jordan Eth*

Jordan Eth
Michael Komorowski
Christina E. Dierolf
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

Attorneys for Defendant
VISTAGEN THERAPEUTICS, INC.