UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN CESARIO, et al.,<br>Plaintiffs,<br>v.<br>VISTAGEN THERAPEUTICS INC., et al.,<br>Defendants. | Case No. 25-cv-01510-TLT<br><br>**ORDER DISMISSING PLAINTIFFS' SECOND AMENDED COMPLAINT WITH PREJUDICE**<br><br>Re: Dkt. Nos. 56, 66, 88, 96 |

## I. INTRODUCTION

Plaintiffs John Cesario and David Preka (collectively, "Plaintiffs"), as self-represented litigants, assert federal and state law claims in this securities fraud action. *See* ECF 51 ("Second Amended Complaint" or "SAC"); ECF 84. Plaintiffs have amended their complaint twice. *See generally* ECF 4; SAC. The number of defendants have been reduced from twenty-seven to two. *See generally* ECF 1; ECF 4; SAC; ECF 82; ECF 83; ECF 84. The two remaining defendants are Vistagen Therapeutics, Inc. ("Vistagen"), a public, clinical stage biopharmaceutical company and John S. Saxe, who is on Vistagen's board of directors ("Board").[1] ECF 84; SAC at 28–29.

In their Second Amended Complaint, Plaintiffs allege that Defendants engaged in a years-long scheme to artificially inflate Vistagen's stock price, primarily by falsely claiming that one of Vistagen's drug candidates, PH94B (fasedienol), had successful clinical trial results. *See generally*

[11] Vistagen is a Nevada corporation headquartered in South San Francisco, California. SAC at 28. Although the Court cites to specific paragraphs in the SAC where possible, the Court cites to ECF page numbers in certain instances because of irregularities in the SAC's paragraph numbering conventions.

SAC; *see also* ECF 59 at 2. PH94B is a nasal spray that Vistagen tested for use as a treatment for social anxiety disorder ("SAD"). SAC ¶¶ 13–14, 33, 60, 91, 93, 118. Plaintiffs assert over a dozen claims against Defendants: (1) state law fraud claims against both Defendants (Counts I–VI); (2) an aiding and abetting claim against Mr. Saxe (Count VII); (3) a gross negligence claim against both Defendants (Count VIII); (4) California Corporations Code claims against both Defendants (Counts IX–X); (5) federal securities fraud claims against both Defendants (Count XI); and (6) a breach of fiduciary duty claim against Mr. Saxe (Count XII).[2] SAC ¶¶ 157–81.

Before the Court are Defendants' motions to dismiss the Second Amended Complaint (each, a "Motion," and collectively, "Motions"). ECF 56; ECF 66. Both Defendants seek to dismiss the SAC for failure to state a claim under Rule 12(b)(6) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"). ECF 56 at 2; ECF 66 at 2. Mr. Saxe's Motion also seeks dismissal under Rule 12(b)(5) due to Plaintiffs' purported failure to timely complete service of process. ECF 66 at 9–11. In support of their Motions, Defendants also ask the Court to incorporate by reference or take judicial notice of certain exhibits. ECF 57; ECF 67. The Court held oral argument on the Motions on July 14, 2026. ECF 90. The same day, Plaintiffs filed a motion for summary judgment, which they subsequently amended. ECF 88; ECF 96.

After review and consideration of the parties' briefs, exhibits, oral arguments, and the relevant legal authority, the Court holds that Plaintiffs fail to adequately allege that any of Defendants' statements or omissions were false or misleading when made. Likewise, the Court holds that Plaintiffs fail to adequately allege that Defendants engaged in any extreme conduct or other wrongdoing. Plaintiffs' allegations are conclusory and contain basic logical deficiencies that lead the Court to conclude that further amendments to the SAC would be futile. Accordingly, the

---

[2] Although the SAC asserts separate claims for deceit and constructive fraud, both claims are listed as Count III. SAC ¶¶ 163–64. This appears to be the result of an inadvertent numbering error.

Court **DISMISSES** the Second Amended Complaint in its entirety **WITH PREJUDICE** and **INCORPORATES BY REFERENCE** or **TAKES JUDICIAL NOTICE** of certain exhibits.[3]

## II. INCORPORATION BY REFERENCE AND JUDICIAL NOTICE

Vistagen asks the Court to incorporate by reference or take judicial notice of Exhibits 1–38, which consist of U.S. Securities and Exchange Commission ("SEC") filings, earnings call transcripts, a National Library of Medicine ("NLM") article from clinicaltrials.gov, and Latham & Watkins' response letter, dated November 2023, to John Cesario ("Response Letter"). ECF 57 at 9–10; *see also* ECF 56-2. Mr. Saxe separately asks the Court to take judicial notice of Vistagen's restated articles of incorporation, which were filed with the SEC. ECF 67; *see also* ECF 66-1.

In response to Defendants' requests for incorporation by reference or judicial notice, Plaintiffs state that Vistagen's exhibits "are all irrelevant to the SAC's claims for securities fraud, fraud on the market, and an unlawful pump and dump scheme." ECF 59 at 2. Plaintiffs assert that "[t]he only exhibit of consequence is Vistagen's [November 2023] response to Plaintiff Cesario's demand letter." ECF 59 at 2. Plaintiffs' briefing is otherwise silent on Defendants' requests for judicial notice or incorporation by reference. ECF 59, 61, 69, 72. At the July 14, 2026 hearing on the Motions, Plaintiffs confirmed that they do not have any objection to Defendants' exhibits.[4]

Under the incorporation-by-reference doctrine, a Court can "treat[] certain documents as

[3] Because the Court dismisses the SAC with prejudice and without leave to amend, Plaintiffs' motion for summary judgment is moot. ECF 88; ECF 96.

[4] Just before the hearing on Defendants' Motions, Plaintiffs submitted a case management statement that purports to summarize the allegations in the SAC. ECF 86. It also asks the Court to take judicial notice of various documents, such as SEC filings. ECF 86 at 4–5, 7. Because this case management statement is an untimely attempt to supplement Plaintiffs' opposition to the Motions, the Court need not consider it in ruling on the Motions. *See* Civ. L.R. 7-3(d). Likewise, the Court declines to consider the SAC's request that the Court take judicial notice of unspecified criminal acts purportedly committed by Vistagen's Chief Executive Officer ("CEO"), Shawn Singh. SAC ¶ 4. Plaintiffs never submitted any authority in support of this request and voluntarily dismissed Mr. Singh from this action without prejudice (ECF 82; ECF 83). *See Freeman v. Zilliox*, No. EDCV220097DSFAS, 2024 WL 1283778, at *2 (C.D. Cal. Mar. 26, 2024) (declining to take judicial notice of pages from an unspecified case).

though they are part of the complaint itself." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). "[A] defendant may seek to incorporate a document into the complaint 'if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.'" *Id.* (citation omitted). Here, Vistagen asks the Court to incorporate by reference Exhibits 1–36, 39, and ECF 1-5. ECF 57 at 3. As explained below, the Court takes judicial notice of Exhibits 1–36 and therefore declines to consider whether they are incorporated by reference.[5] The Court denies Defendants' request to incorporate Exhibit 39 by reference because it is unable to conclude that the clinicaltrials.gov article either "forms the basis of [Plaintiffs'] claim[s]" or is referred to extensively in the SAC. *Khoja,* 899 F.3d at 1002. The Court takes judicial notice of ECF 1-5 because the Response Letter is referenced in the SAC and Plaintiffs do not object or dispute its authenticity. *In re Fastly, Inc. Sec. Litig.*, No. 20-CV-06024-PJH, 2021 WL 5494249, at *7 (N.D. Cal. Nov. 23, 2021) ("The [C]ourt grants the request for incorporation by reference given that plaintiff does not object, the documents were referenced in the complaint, and plaintiff does not dispute their authenticity."). Accordingly, the Court incorporates ECF 1-5 by reference.

Separate from the incorporation-by-reference doctrine, "[t]he [C]ourt may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial [C]ourt's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Court "must take judicial notice if a party requests it and the [C]ourt is supplied with the necessary information." Fed. R. Evid. 201(c). Moreover, at oral argument, Plaintiffs confirmed that they do not object to Vistagen's request. Accordingly, the Court takes judicial notice of Exhibits 1 through 38 (SEC filings and

---

[5] Because the Court cannot use the hyperlinks in the SAC, the Court is unable to determine whether the SAC "refers extensively" to each of these exhibits or whether they "form[] the basis of" of Plaintiffs' claims. *Khoja,* 899 F.3d at 1002 (citation and internal quotation marks omitted). For this reason, the Court declines to decide whether Exhibits 1–36 may be incorporated by reference. Instead, the Court takes judicial notice of these exhibits. *See* Fed. R. Evid. 201.

earnings call transcripts) for the fact of their existence and for the purpose of determining what information was available to the market. *See Steamfitters Loc. 449 Pension & Ret. Sec. Funds v. Extreme Networks, Inc.*, 824 F. Supp. 3d 983, 996 (N.D. Cal. 2026) (taking judicial notice of earnings call transcripts and public SEC filings "for the purpose of determining what information was available to the market or [for their] existence in the public domain"). In addition, the Court takes judicial notice of Mr. Saxe's exhibit for the fact of its existence, given that it is a public document "whose accuracy cannot reasonably be questioned." *Das v. Unity Software Inc.*, No. 5:22-CV-03962-EJD, 2024 WL 1141733, at *7 (N.D. Cal. Mar. 15, 2024) (taking judicial notice of SEC filings); *see also Chan v. ArcSoft, Inc.*, No. 19-CV-05836-JSW, 2021 WL 12103025, at *3 (N.D. Cal. Sept. 28, 2021) ("The Court will take judicial notice of ArcSoft's Articles of Incorporation because they are matters of public record."). At this stage, however, the Court declines to "consider the truth of the statements" in Vistagen Exhibits 1–38 or in Mr. Saxe's exhibit. *Das*, 2024 WL 1141733, at *7.

Subject to the limitations set forth above, the Court **GRANTS** Vistagen's request to incorporate by reference or take judicial notice of Exhibits 1–38 and ECF 1-5, as well as Mr. Saxe's request to take judicial notice of Vistagen's restated articles of incorporation. The Court **DENIES** Vistagen's request to take judicial notice of Exhibit 39, which is an NLM article on clinicaltrials.gov.

## III. BACKGROUND

### A. Procedural Background

On February 13, 2025, Plaintiffs commenced this action. ECF 1. Plaintiffs filed a first amended complaint on March 10, 2025. ECF 4.

On August 15, 2025, the Court issued an order to show cause why the action should not be dismissed for failure to serve the summons and complaint on the defendants. ECF 12. Plaintiffs requested an extension of time for service of process. ECF 13. The Court discharged the order to

United States District Court
Northern District of California

show cause, granted an extension until September 19, 2025, and referred Plaintiffs to the Legal Help Center. ECF 20; ECF 23.

Plaintiffs served Vistagen by the extended service of process deadline. ECF 24. They did not successfully serve any other defendants. Thereafter, Vistagen moved to dismiss Plaintiffs' first amended complaint. ECF 26. The motion was fully briefed by the parties. ECF 29; ECF 32. On October 3, 2025, the Court referred Plaintiffs to the Legal Help Center for a second time. ECF 35.

On November 3, 2025, Plaintiffs sought leave to file the SAC. ECF 45. The Court granted leave to amend on December 4, 2025, and denied Vistagen's motion to dismiss the first amended complaint as moot. ECF 50. The SAC was filed that same day. *See generally* SAC.

On December 24, 2025, Vistagen moved to dismiss the SAC under Rule 12(b)(6) and the PSLRA. ECF 56 at 2. Vistagen also sought judicial notice or incorporation by reference of 40 exhibits in support of its Motion. ECF 57. Plaintiffs filed their opposition to Vistagen's Motion on January 5, 2026. ECF 59. One week later, Plaintiffs filed a supplemental opposition. ECF 61. Vistagen filed its reply in further support of the Motion on January 14, 2026. ECF 62.

Over five months after Plaintiffs' extended service of process deadline had passed, Plaintiffs purported to serve Mr. Saxe on February 1, 2026. ECF 66 at 8. Three weeks later, Mr. Saxe moved to dismiss the SAC under Rules 12(b)(5), 12(b)(6), and the PSLRA. ECF 66 at 2. Mr. Saxe also sought judicial notice of 1 exhibit in support of his Motion. ECF 67. Plaintiffs filed their opposition to Mr. Saxe's Motion on March 16, 2026. ECF 69. Mr. Saxe filed his reply in further support of his Motion the same day. ECF 68. Plaintiffs subsequently filed an impermissible response to Mr. Saxe's reply. ECF 72; *see also* Civ. L.R. 7-3(d).

In April 2026, Plaintiffs, as self-represented litigants, filed a derivative action on behalf of Vistagen in the District of Nevada. *See Cesario v. Vistagen Therapeutics, Inc.*, No. 26-cv-01128-

RFB-MDC (D. Nev.).[6] In June 2026, Plaintiffs voluntarily dismissed all remaining defendants from this action without prejudice, except for Vistagen and Mr. Saxe. ECF 82; ECF 83.

Shortly before oral argument on the Motions, Plaintiffs filed a case management statement that operates as an impermissible attempt to supplement Plaintiff's opposition to the Motion. *See* Civ. L.R. 7-3(d). It also includes an untimely request for judicial notice. *See id.* The Court held oral argument on the Motions on July 14, 2026, and took the matter under submission. ECF 90. The Court maintained the further case management conference scheduled for October 8, 2026, but stayed other remaining dates and deadlines in this action until issuance of this Order. ECF 90; ECF 97.

On the same day as the motion to dismiss hearing, Plaintiffs filed a motion for summary judgment. ECF 88. Plaintiffs subsequently amended their motion for summary judgment. ECF 96. Any deadline to respond to the motion for summary judgment is currently stayed. ECF 97.

Defendants' Motions to dismiss the Second Amended Complaint are currently before the Court for decision.

**B. Factual Background**

Plaintiffs allege that Defendants have engaged in a scheme to artificially inflate Vistagen's stock price that began in 2019 and that continues to this day. SAC ¶ 6. As alleged in the SAC, Defendants artificially inflated Vistagen's stock price by making dozens of false and misleading statements to investors regarding Vistagen's drug development, plans, clinical results, and securities offerings. *See generally* SAC. According to Plaintiffs, "[t]he linchpin of [Defendants'] fraud is Vistagen's drug candidate[,] PH94B." ECF 59 at 2. Plaintiff's overarching theory is that

---

[6] In addition, the Court notes that different plaintiffs have filed a federal securities class action against Vistagen in this District. *See Eller v. Vistagen Therapeutics, Inc.*, No. 3:26-cv-00427-RS, ECF 1 (N.D. Cal. Jan. 15, 2026). At oral argument, the parties confirmed that the class action is not related to this action. There is also a follow-on derivative action that has been filed against various defendants in this District, including Mr. Saxe. *In re Vistagen Therapeutics, Inc. S'holder Derivative Litig.*, No. 3:26-cv-02656-RS, ECF 1 (N.D. Cal. Mar. 26, 2026).

Defendants concealed negative information from investors and painted an overly rosy picture of PH94B's clinical potential. *See* ECF 59 at 2. Defendants' allegedly false and misleading statements artificially raised Vistagen's stock price and allowed Defendants to sell millions of dollars' worth of stock to an unsuspecting public. *See* ECF 59 at 2–3; *see generally* SAC. In short, Plaintiffs allege that Vistagen engaged in a pump-and-dump scheme that caused Vistagen's stock price to plummet. *See* ECF 59 at 2–3; *see generally* SAC.

Mr. Cesario alleges that he suffered losses of nearly $500,000 from Vistagen stock that he purchased between 2020 and 2022. SAC ¶¶ 86, 187. Mr. Cesario further alleges that he was induced to buy stock after Defendants announced positive trial results in connection with Vistagen's Phase 3 PALISADE-2 trial for PH94B. SAC ¶ 80. This announcement occurred on August 7, 2023. SAC ¶¶ 60–62. Mr. Preka alleges that he purchased over $1 million in Vistagen stock between 2019 and 2023, and that he suffered losses of $450,000 from stock sales in 2022 and 2023.[7] SAC ¶ 188. Neither Plaintiff alleges that he purchased any Vistagen stock after 2023. *See generally* SAC.

Below, the Court describes the general chronology of Vistagen's purported misconduct as alleged in the SAC. Because Plaintiffs are self-represented litigants, the Court construes the SAC liberally and makes certain logical inferences in describing this chronology. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

**i. Vistagen Acquires New Drug Compounds, Including PH94B**

In 2018, Vistagen acquired the license for PH94B. SAC ¶ 29. Although Vistagen stated that PH94B might treat various conditions, SAD was the indication with the most market potential. SAC ¶ 29. In November 2019, Vistagen announced that one of its other drug candidates failed to meet its primary endpoint in a Phase 2 trial. SAC ¶ 30. Vistagen's stock price dropped precipitously

[7] Another paragraph in the SAC alleges that Mr. Preka purchased over $800,000 in Vistagen stock beginning in 2019. SAC ¶ 86.

in the wake of this announcement. SAC ¶ 30.

**ii. Vistagen Raises Capital During the COVID-19 Pandemic and Makes Public Statements Regarding PH94B's Clinical Potential**

In early 2020, the COVID-19 pandemic struck. SAC ¶ 31. During the pandemic, Vistagen announced that it planned to submit a proposed protocol to the U.S. Food and Drug Administration ("FDA") for a Phase 2 study of PH94B as a treatment for COVID-19-related anxiety. SAC ¶ 32. According to Plaintiffs, Defendants never seriously prioritized this trial and used it to raise funds for Vistagen during the COVID-19 pandemic. SAC ¶¶ 31–32. As alleged in the SAC, Vistagen raised substantial capital via its stock offerings during the pandemic. *E.g.*, SAC ¶¶ 33–34.

Plaintiffs further allege that Defendants made false and misleading statements concerning the successful completion of PH94B's Phase 2 clinical trial program for SAD. *E.g.*, SAC ¶ 5. Plaintiffs primarily rely on an omissions-based theory of wrongdoing. *See generally* SAC.

One of Plaintiffs' primary allegations is that Defendants were required to disclose that PH94B's clinical trial results were returned by the NLM after a limited quality-control ("QC") review. *E.g.*, SAC ¶¶ 5, 8, 11–12, 15, 48, 53, 57, 63, 65–67, 75, 77–78, 82, 90–96, 100–07. As indicated by a clinicaltrials.gov screenshot in the FAC, these NLM staff determinations were publicly available online, and were available to Plaintiffs. SAC ¶ 103. As indicated by the screenshot in the SAC, "NLM's limited QC review assesses for apparent errors, deficiencies, or inconsistencies." SAC ¶ 103. Nonetheless, "NLM staff do not verify the scientific validity or relevance of the submitted information." SAC ¶ 103. In addition, Plaintiffs allege that Defendants were legally required to ensure that their clinical trial results were published on clinicaltrials.gov. SAC ¶ 11. In sum, Plaintiffs' main theory of wrongdoing is that Defendants were required to disclose the NLM's publicly available returns of Vistagen's clinical trial results. *See generally* SAC. Because Defendants failed to do so, virtually any public statements they made regarding Vistagen's clinical plans, drug development, study results, or securities offerings were allegedly false and

misleading. *See generally* SAC.

Plaintiffs also allege that Defendants were required to disclose additional information regarding Vistagen's PH94B studies, such as: (1) where the trials were held; (2) that an 88-person Phase 2 trial only included women; and (3) that the FDA had never approved a social anxiety drug based on a trial that used a Subjective Units of Distress Scale ("SUDS") methodology. *E.g.*, SAC ¶ 5. According to Plaintiffs, Defendants used these purported omissions to mislead investors into believing that PH94B's Phase 2 SAD trials were successful. *See* ECF 59 at 2–5. This omissions-based theory of wrongdoing underlies most of the SAC's allegations. *See* ECF 59 at 2–5.

**iii. Vistagen Initiates its PH94B Phase 3 Clinical Program**

On May 26, 2021, Vistagen announced that it had commenced its Phase 3 clinical trial program to study PH94B as a treatment for SAD, beginning with its PALISADE-1 trial. SAC ¶ 48. In the fall of 2021, Vistagen announced the commencement of its PALISADE-2 trial. SAC ¶ 50. According to Plaintiffs, Defendants were grossly negligent for conducting these clinical trials during the height of the COVID-19 pandemic. SAC ¶¶ 15, 145.

On July 22, 2022, Vistagen announced that the PALISADE-1 trial failed to meet its primary endpoint. SAC ¶ 51. As stated by Vistagen, "[w]hile the results of PALISADE-1 [were] not consistent with prior positive results from Phase 2 trials of PH94B in social anxiety disorder, [Vistagen] remain[ed] committed to transforming the treatment landscape for those living with anxiety, depression, and other central nervous system disorders." SAC ¶ 52; *see also* ECF 56-26 at 5. Vistagen's stock price purportedly plummeted in the wake of Vistagen's announcement regarding the disappointing outcome of its PALISADE-1 trial. SAC ¶ 52.

As alleged in the SAC, Defendants misled the market regarding their plans, drug development, and clinical results for PH94B because they failed to disclose that the NLM returned Vistagen's clinical trial results after conducting a limited QC review, among numerous other omissions. *E.g.*, SAC ¶¶ 5, 8, 11–12, 15, 48, 53, 57, 63, 65–67, 75, 77–78, 82, 90–96, 100–07.

United States District Court
Northern District of California

Thus, Plaintiffs allege that Defendants deceived investors into believing that PH94B showed clinical promise in Phase 2 and Phase 3 trials. *See generally* SAC.

**iv. Vistagen Pauses Enrollment for the PALISADE-2 Trial**

Following the release of Vistagen's disappointing PALISADE-1 trial results, Vistagen announced that it was pausing PALISADE-2 while it examined the PALISADE-1 trial results. ECF 56-27 at 5. According to an August 2022 press release, Vistagen told investors that it had "paused enrollment in [its] PALISADE-2 Phase 3 study and ha[d] engaged an independent biostatistician to conduct an interim analysis of data collected to date." ECF 56-27 at 5. Based on certain positive data, and the "positive indications from prior Phase 2 studies," Vistagen expressed its belief "that continued Phase 3 development of PH94B as a potential treatment for SAD [was] appropriate." SAC ¶ 52; ECF 56-27 at 5.

In September 2022, Vistagen announced that it would proceed with the PALISADE-2 Phase 3 trial of PH94B as a treatment for SAD following interim analysis. SAC ¶¶ 55–56. "[B]ased on the outcome of the interim analysis and the recommendation of the independent biostatisticians," Vistagen announced that it would "continue PALISADE-2 as planned to the full enrollment." ECF 56-29 at 3.

According to Plaintiffs, however, Vistagen lacked the funds to complete the PALISADE-2 trial and ultimately used the PALISADE-2 trial results to perpetrate a pump-and-dump scheme. SAC ¶¶ 56–57.

**v. Vistagen Terminates the PALISADE-2 Trial, Announces Positive Top-Line Trial Results, and Raises Capital Via its Securities Offerings**

As alleged in the SAC, Vistagen never resumed the PALISADE-2 trial and ultimately terminated it. SAC ¶¶ 56–57, 69, 82, 116, 127. Nonetheless, on August 7, 2023, Vistagen released positive top-line results for the PALISADE-2 trial in an SEC Form 8-K and accompanying press release. SAC ¶ 60. The headline and sub-headline stated as follows:

> **Vistagen Announces Positive Top-Line Results from Phase 3 PALISADE-2 Trial of Fasedienol (PH94B) Nasal Spray in Social Anxiety Disorder**
>
> ***First positive U.S. Phase 3*** ***study of an investigational therapy for social anxiety disorder in over 15 years***

SAC ¶ 60. The announcement further disclosed that enrollment for the PALISADE-2 trial had been paused after Vistagen received top-line results for PALISADE-1 in order to "allow for independent third-party biostatisticians to conduct an interim analysis of the 141 patients randomized in the trial up to the date of the pause." ECF 56-33 at 7. "Although the results of the independent interim analysis indicated that continuation of PALISADE-2 would not be futile, Vistagen determined the best course of action was to close the PALISADE-2 study given the expense, time and methodological complexities involved in resuming PALISADE-2." ECF 56-33 at 7.

According to Plaintiffs, the August 2023 announcement regarding PALISADE-2 was false and misleading because PALISADE-2 was not, in fact, successful. SAC ¶¶ 61–63, 68. Plaintiffs allege that Defendants should have described the top-line results as "interim," and should have stated that Vistagen terminated the Phase 3 trial because it lacked the funds to complete it. SAC ¶¶ 9–10, 68. In Plaintiffs' view, the announcement of positive top-line results for PALISADE-2 was simply an attempt to raise capital for Vistagen. SAC ¶¶ 9–10.

As alleged by Plaintiffs, Defendants performed a 1/30 reverse stock split, issued a prospectus, announced positive results from the PALISADE-2 trial, and then instructed their sales agent, Jefferies LLC, to start selling stock pursuant to an at-the-market ("ATM") securities offering. SAC ¶¶ 63, 66. Defendants purportedly continued to sell stock throughout the fall of 2023 and were continually defrauding investors by falsely touting the positive top-line results from Vistagen's PALISADE-2 trial. SAC ¶¶ 61–75, 79. In Plaintiffs' view, Defendants' actions constituted a pump-and-dump scheme that defrauded Vistagen investors. *See* ECF 59 at 5–9.

#### vi. Mr. Cesario Sends a Demand Letter to Vistagen and Ultimately Files This Action

In the fall of 2023, Mr. Cesario sent a demand to Vistagen's Board "accusing Vistagen of fraud and violating securities laws by failing to disclose that ClinicalTrials.gov rejected publishing the PH94B trials after they did a limited quality control review." SAC ¶ 139. In November 2023, Vistagen's counsel responded to the demand letter. SAC ¶ 140; ECF 1-5. According to Plaintiffs, Vistagen's reply to the demand letter was "deliberately unresponsive." SAC ¶ 140. Plaintiffs ultimately commenced this action in federal court and are pursuing a stockholder derivative action on behalf of Vistagen in the District of Nevada.

## IV. LEGAL STANDARD[8]

### A. Rule 12(b)(6)

"Under Rule 12(b)(6), a party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To overcome a motion to dismiss, a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009) (citation and internal quotation marks omitted).

[8] The Court does not discuss the standard for dismissal for insufficient service of process under Rule 12(b)(5) because the Court dismisses all claims against Mr. Saxe without leave to amend under Rule 12(b)(6).

### B. Pleading Standard for Federal Securities Fraud Claims

"To plead a claim under § 10(b) and Rule 10b-5, a plaintiff must allege '(1) a material misrepresentation or omission; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation.'" *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 413 (9th Cir. 2020) (citation omitted). To plead a claim for scheme liability under Rule 10b-5(a) and (c), a plaintiff must allege [that] 'each defendant committed a manipulative or deceptive act in furtherance of the scheme.'" *Petersen v. Stem, Inc.*, No. 23-CV-02329-MMC, 2024 WL 4602710, at *12 (N.D. Cal. Aug. 30, 2024) (citation omitted).

"Securities fraud . . . actions must meet the higher, exacting pleading standards of Federal Rule of Civil Procedure 9(b) and the [PSLRA]." *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 604 (9th Cir. 2014).[9] Plaintiffs alleging securities fraud must plead all the elements of a securities fraud action with particularity, including "circumstances constituting fraud or mistake." *Id.* at 604–05 (citation and internal quotation marks omitted); Fed. R. Civ. P. 9(b). Under the PSLRA, plaintiffs are required to "plead with particularity both falsity and scienter." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009) (citation and internal quotation marks omitted), *as amended* (Feb. 10, 2009).

### C. Pleading Standard for State Law Fraud Claims: Rule 9(b)

"The pleading standard under Rule 9(b) for state law fraud claims is lower than the federal PSLRA standard, as Rule 9(b) requires particularity only in regard to the circumstances of fraud,

[9] Rule 9(b) applies to scheme liability claims, but it is not entirely clear if the heightened pleading standards for falsity and scienter under the PSLRA apply. *Compare Khan v. ChargePoint Holdings, Inc.*, No. 23-CV-06172-NW, 2026 WL 483060, at *4 (N.D. Cal. Feb. 20, 2026) ("Both scheme and statement liability claims under Rule 10b-5 are subject to the heightened pleading requirements of Rule 9(b) and the PSLRA."), *with State Tchrs. Ret. Sys. of Ohio v. ZoomInfo Techs. Inc.*, No. 3:24-CV-05739-TMC, 2025 WL 3013683, at *18 (W.D. Wash. Oct. 28, 2025) ("Although not subject to the PSLRA pleading requirements, the conduct underlying claims for scheme liability must be alleged with particularity under Rule 9(b).").

while '[m]alice, intent, knowledge, and other conditions of a person's mind' may be pled generally." *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1036 (9th Cir. 2016) (citations omitted). Nonetheless, Rule 9(b) still requires plaintiffs to "identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018).

## V. DISCUSSION[10]

Plaintiffs primarily allege that Defendants misled Vistagen investors by omitting information from their public disclosures regarding Vistagen's drug development, plans, clinical results, and securities offerings. *See generally* SAC. More specifically, Plaintiffs allege that Defendants inflated Vistagen's stock price by overstating PH94B's clinical potential. *See generally* SAC; ECF 59 at 2. Accordingly, Plaintiffs allege that Defendants made dozens of false and misleading statements to Vistagen investors. *See generally* SAC. Plaintiffs further allege that these misstatements form the basis of a broader scheme to artificially inflate Vistagen's stock price that continues to this day. SAC ¶ 6.

Because Plaintiffs are self-represented litigants, the Court construes the SAC liberally. *Erickson*, 551 U.S. at 94 ("[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (citation modified). "Nevertheless, '[self-represented] litigants are bound by the rules of procedure.'" *Foregger v. Redfin Corp.*, No. 24-CV-05701-HSG, 2025 WL 917103, at *2 (N.D. Cal. Mar. 26, 2025) (quoting *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995)). "Even a 'liberal interpretation of a . . . complaint may not supply essential elements of the claim that were not initially pled.'" *Id.* (quoting *Ivey v. Bd. of Regents of*

[10] The Court does not reach all of the arguments and issues raised in the parties' briefing on the Motions. Where a particular argument or legal doctrine is dispositive, the Court rules on that issue only.

*Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982)). Below, the Court analyzes each of Plaintiffs' claims, beginning with the federal securities law claims (Count XI) and then turning to the state law claims (Counts I–X, XII).

**A. Plaintiffs Fail to Adequately Allege Any Federal Securities Fraud Claims Under the Exchange Act or Rule 10b-5 (Count XI).**

In the SAC, Plaintiffs allege three federal securities fraud violations. SAC ¶¶ 5–10, 178–79. First, Plaintiffs allege that both Defendants are liable for making false and misleading statements to the market under Section 10(b) of the Exchange Act and Rule 10b-5. SAC ¶¶ 5, 178–79. Second, Plaintiffs allege that both Defendants engaged in a fraudulent scheme to defraud Vistagen investors in violation of Rule 10b-5(a) and (c). SAC ¶¶ 6–10, 178–79. Third, Plaintiffs allege that Mr. Saxe is liable as a controlling person under Section 20(a) of the Exchange Act. SAC ¶¶ 5–10, 178–79. The Court examines each of these claims in turn.

**i. Plaintiffs Fail to Plead a Viable Statement Liability Claim Under Section 10(b) and Rule 10b-5 of the Exchange Act.**

Defendants seek dismissal of Plaintiffs' Section 10(b) and Rule 10b-5 claim on the grounds that Plaintiffs are unable to adequately plead actionable falsity, scienter, or loss causation. ECF 56 at 15–25. In addition, Defendants argue that Plaintiffs lack standing to sue under Section 10(b) of the Exchange Act for any alleged misstatements that occurred after their last purchase of Vistagen stock. ECF 56 at 26. For the reasons explained below, the Court agrees that Plaintiffs have failed to adequately plead falsity, and therefore declines to reach Defendants' scienter, loss causation, and standing arguments.

**1. Falsity**

To properly plead falsity, a plaintiff must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, ... state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). Statements and omissions are actionably



United States District Court
Northern District of California

United States District Court
Northern District of California

false if they "directly contradict what the defendant knew at that time or create an impression of a state of affairs that differs in a material way from the one that actually exists." *In re Facebook, Inc. Sec. Litig.*, 87 F.4th 934, 948 (9th Cir. 2023) (citations and internal quotation marks omitted). "A litany of alleged false statements, unaccompanied by the pleading of specific facts indicating why those statements were false," does not meet the falsity standard. *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1070 (9th Cir. 2008).

**a. Omission of NLM Returns of Vistagen's Clinical Trial Results**

According to Plaintiffs, Defendants made dozens of false and misleading statements regarding Vistagen's drug development, plans, clinical results, and securities offerings because they failed to tell investors that Vistagen's clinical trial results were returned by the NLM after a limited QC review. *E.g.*, SAC ¶¶ 5, 8, 11–12, 15, 48, 53, 57, 63, 65–67, 75, 77–78, 82, 90–96, 100–07. Defendants take aim at this allegation and argue that their statements were not false or misleading for three reasons. ECF 56 at 17–20. First, Defendants argue that the NLM's decisions are publicly available on clinicaltrials.gov. ECF 56 at 17–18. Second, Defendants argue that NLM staff determinations have no bearing on clinical trial results. ECF 56 at 18. Third, Defendants argue that Plaintiffs fail to specify how NLM staff determinations relate to the purported misstatements. ECF 56 at 18–20.

The Court declines to consider Defendants' first argument at the motion to dismiss stage. Although the Ninth Circuit has held that certain statements were not misleading in light of the defendants' other public disclosures, here, Defendants ask the Court to look further afield than their own public statements. *See Apollo*, 774 F.3d at 607. In *Pardi v. Tricida, Inc.*, the Court rejected the defendants' argument that certain statements concerning the location of their clinical trials were not misleading because the information was posted on clinicaltrials.gov. No. 21-CV-00076-HSG, 2022 WL 3018144, at *5–6 (N.D. Cal. July 29, 2022). In *Pardi*, the Court held that this argument amounted to a truth-on-the-market defense that could not be considered at the motion to dismiss

stage. *Id.* The Court finds *Pardi* persuasive and reaches the same conclusion here.

Setting aside Defendants' truth-on-the-market defense, Defendants correctly point out that the SAC admits that "NLM staff do not verify the scientific validity or relevance of the submitted [clinical trial] information." ECF 56 at 18. Indeed, the SAC includes a screenshot from clinicaltrials.gov that describes the NLM's QC review as "limited." SAC ¶ 103. Plaintiffs seemingly ask the Court to infer that these returns of Vistagen's clinical trial results mean that PH94B's clinical potential was overstated, or that the clinical trials themselves were not successful. *See generally* SAC. Plaintiffs fail, however, to allege particularized facts suggesting that NLM staff determinations had any impact on PH94B's clinical potential or on clinical outcomes. *In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828, 836 (9th Cir. 2022) ("Here, the Pensions have not pleaded specific facts articulating why Nektar's 30-fold chart about the Phase 1 EXEL clinical results was materially misleading."). In short, Plaintiffs ask the Court to engage in speculation. *See Huang v. Avalanche Biotechnologies, Inc.*, No. 15-CV-03185-JD, 2016 WL 6524401, at *7 (N.D. Cal. Nov. 3, 2016) (holding that plaintiffs failed to adequately allege falsity, where they "effectively invite[d] the Court to speculate about what information besides adverse events was contained in the June 2014 interim data analysis, what the results were, and whether it was analyzed in a way to predict efficacy in the short or long term").

Under Rule 9(b) and the PSLRA's demanding pleading standards, the Court cannot connect the dots for Plaintiffs. Plaintiffs themselves must allege, with particularity, why the omission of NLM staff determinations from Defendants' disclosures would mislead a reasonable investor. *In re Nektar*, 34 F.4th at 835–36 (holding that plaintiffs failed to adequately allege that statements regarding clinical trial results were false or misleading, where plaintiffs failed to specify why a reasonable investor would have been deceived). Although companies have an obligation not to mislead investors once they choose to tout positive information, Plaintiffs fail to adequately allege that negative NLM QC reviews had any bearing on, or were inconsistent with, Defendants' public

statements. *See id.*; *see also Khoja*, 899 F.3d at 1011 ("Although Orexigen touted the interim results and therefore created a duty to disclose the corresponding adverse information, Orexigen never touted having permission to publish the results.").

**b. Other Purported Omissions**

Plaintiffs similarly rely on several purported omissions to show that Defendants' statements regarding their drug development, plans, clinical results, securities offerings were false or misleading when made. *See* ECF 59 at 4–5. For example, the SAC alleges that Defendants omitted over a dozen material facts regarding Vistagen's PH94B trials for SAD, including: (1) where the trials were held; (2) that an 88-person Phase 2 trial only included women; and (3) that the FDA had never approved a social anxiety drug based on a trial that used a SUDS methodology. Defendants argue that these and various other omissions are inactionable because Plaintiffs fail to allege "any 'specific facts' that would show why each statement is misleading." ECF 56 at 16–17; ECF 62 at 7–8. The Court agrees with Defendants.

Although Plaintiffs may have desired more information concerning Vistagen's clinical trials, Plaintiffs fail to allege any particularized facts explaining why Defendants' purported omissions made Vistagen's public disclosures false or misleading. *See Nektar*, 34 F.4th at 836; *see also Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 615 (9th Cir. 2022) ("Securities laws . . . do not require real-time business updates or complete disclosure of all material information whenever a company speaks on a particular topic. To the contrary, a company can speak selectively about its business so long as its statements do not paint a misleading picture."). For example, the SAC fails to plead any particularized facts explaining why any of Defendants' purported omissions would have misled investors into believing that Phase 2 trials for PH94B were more successful than they actually were. *E.g.,* SAC ¶ 5; *see also* ECF 59 at 4–5. Plaintiffs' allegations amount to little more than a conclusory list of purported omissions. *E.g.,* SAC ¶ 5; *see also* ECF 59 at 4–5. Accordingly, Plaintiffs have failed to meet their pleading burden under Rule 9(b) and the PSLRA.

### c. Forward-Looking Statements

Defendants identify 10 purported misstatements as forward-looking statements that are inactionable under the PSLRA's safe harbor, including the following press release headline from September 2022: "Vistagen to Proceed with PALISADE-2 Phase 3 Clinical Trial of PH94B in Social Anxiety Disorder following Interim Analysis." ECF 56 at 20 (identifying the September 2022 headline as a forward-looking statement (listed as Statement 22 in Vistagen's Motion)); ECF 56-29 at 5. This September 2022 headline is the only forward-looking statement that Plaintiffs meaningfully address in their motion to dismiss briefing.[11] ECF 59 at 5–6. Specifically, Plaintiffs argue that the headline "was a definitive statement of present fact," and that Defendants "knew that Vistagen lacked the financial resources required to restart and complete the PALISADE-2 trial" when the statement was made. ECF 59 at 5.

"Even where a plaintiff has properly pleaded all six elements of a Section 10(b) violation, the allegedly false or misleading statement may still be shielded from liability by the 'safe harbor' provision of the PSLRA." *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1141 (9th Cir. 2017). The PSLRA harbor protects defendants from liability for false or misleading forward-looking statements in two situations. *See id.* First, the safe harbor protects defendants from liability for forward-looking statements that are identified as forward-looking and are accompanied by meaningful cautionary language. *See id.* Second, the safe harbor protects forward-looking statements that are made without actual knowledge that they are false or misleading, even if they are not identified as forward-looking and are not accompanied by cautionary language. *See id.* Forward-looking statements include "statement[s] of the plans and objectives of management for future operations, including plans or objectives relating to the [company's] products," as well as

[11] Plaintiffs inadvertently state that the September 2022 Form 8-K and accompanying press release were issued in August 2023. ECF 59 at 5.

"assumptions underlying or relating to" statements concerning management's plans and objectives. 15 U.S.C. § 78u-5(i)(1).

As an initial matter, the Court rejects Plaintiffs' contention that Defendants' press release headline "was a definitive statement of present fact." ECF 59 at 5. To the contrary, the headline conveyed that Defendants would proceed with the PALISADE-2 trial. *Colyer v. Acelrx Pharms.*, Inc., No. 14-CV-04416-LHK, 2015 WL 7566809, at *10 (N.D. Cal. Nov. 25, 2015) (holding that statements providing detail regarding planned rollout of medical device were forward-looking); *In re Nuvelo, Inc., Sec. Litig.*, No. C 07-4056 VRW, 2008 WL 5114325, at *15 (N.D. Cal. Dec. 4, 2008) ("The alleged misstatements about the likelihood of future success at phase 3 trials, regulatory approval, or commercialization of alfimeprase all fit the definition of forward-looking statements under the PLSRA."). In short, the headline was forward-looking because it was a statement regarding Defendants' future clinical trial plans.

Second, even if the headline was not identified as forward-looking or accompanied by meaningful cautionary language, it would still be entitled to safe harbor protection because Plaintiffs fail to allege that Defendants had actual knowledge that it was false or misleading when issued. *Lopes v. Fitbit, Inc.*, No. 18-CV-06665-JST, 2020 WL 1465932, at *8–9 (N.D. Cal. Mar. 23, 2020) (holding that plaintiffs failed to adequately plead actual knowledge, where plaintiffs "provide[d] little evidence that [d]efendants' revenue guidance was *knowingly* false"), *aff'd*, 848 F. App'x 278 (9th Cir. 2021). Plaintiffs allege that a Vistagen Senior Vice President, Mark McPartland, eventually admitted to Mr. Cesario "that Vistagen did not have the funds to complete the PALISADE-2 trial because it could not obtain the necessary financing." SAC ¶ 58. However, Plaintiffs expressly acknowledge that Mr. Cesario's conversations with Mr. McPartland took place after the September 2022 press release was published. SAC ¶ 58. Indeed, the SAC does not contain any non-conclusory allegations that would allow this Court to infer that Defendants had actual knowledge that the September 2022 press release was false or misleading when issued. *See Lopes*,

2020 WL 1465932, at *8–9. Thus, the September 2022 headline is protected by the PSLRA safe harbor.[12]

**d. Announcement of Top-Line Results for PALISADE-2 and Purported Failure to Disclose That Vistagen Lacked the Funds to Complete the Trial**

Plaintiffs further argue that Defendants' August 7, 2023 announcement of positive top-line results from the Phase 3 PALISADE-2 trial was false and misleading. ECF 59 at 6. According to Plaintiffs, the SEC Form 8-K and accompanying press release were false or misleading when made because they: (1) did not state that the PALISADE-2 results were interim results; (2) falsely portrayed the PALISADE-2 trial as successful in order to effectuate a pump-and-dump scheme; and (3) failed to disclose that Vistagen terminated the PALISADE-2 trial because it lacked the funds to complete it. SAC ¶¶ 9–10, 59–68. Defendants disagree and argue that Plaintiffs fail to adequately allege falsity with respect to any purported misstatements because the SAC fails to include specific facts alleging why any misstatement was false or misleading. ECF 56 at 16–17. The Court agrees with Defendants.

First, Plaintiffs fail to allege any particularized facts that would allow the Court to infer that the August 7, 2023 announcement was false or misleading because it did not describe the PALISADE-2 trial results as interim results. *See Nektar*, 34 F.4th at 836 (holding that plaintiffs failed to adequately plead why chart was misleading). Indeed, the August 7, 2023 press release explains that "Vistagen determined the best course of action was to close the PALISADE-2 study given the expense, time and methodological complexities involved in resuming PALISADE-2" (ECF 56-33 at 7). *Weston Fam. P'ship LLLP*, 29 F.4th at 622 (assessing allegedly misleading

[12] Even setting aside the PSLRA safe harbor, Plaintiffs fail to adequately plead any non-conclusory facts demonstrating that the September 2022 headline was false or misleading when issued. *Smith v. NetApp, Inc.*, No. 19-CV-04801-JST, 2021 WL 1233354, at *6 (N.D. Cal. Feb. 1, 2021) ("To plead fraud with particularity, a plaintiff must allege that the statement was false when made – meaning, there must have been some contemporaneous information that would have shown that the statements were false at the exact time that defendants made them.").

statement in blog post by examining context in which purported misstatement was made). Because Vistagen had closed the PALISADE-2 trial, there is no indication that any other PALISADE-2 results would ever become available or be released. ECF 56-33 at 7. Given this additional context, the Court cannot conclude that the August 7, 2023 8-K and press release were false or misleading because they did not describe the trial results as interim results. *See Weston Fam. P'ship LLLP*, 29 F.4th at 622–23.

Second, the SAC lacks any particularized facts demonstrating that the trial results described in the 8-K and press release were not, in fact, positive, or that the 8-K and press release were otherwise false or misleading. *See Norfolk Cnty. Ret. Sys. v. Solazyme, Inc.*, No. 15-CV-02938-HSG, 2016 WL 7475555, at *3 (N.D. Cal. Dec. 29, 2016) ("The allegations omit contemporaneous facts that would establish a contradiction between the alleged materially misleading statements and reality."); *Nektar*, 34 F.4th at 836. To the extent that Plaintiffs allege that the 8-K and press release were misleading because they omitted the NLM's prior returns of Vistagen's clinical trial results, those allegations fail because Plaintiffs do not explain why this omission made Defendants' statements misleading. *See Nektar*, 34 F.4th at 836. Plaintiffs simply rely on their conclusory allegations that these returns of Vistagen's clinical trial results meant that the PALISADE-2 trial was not successful. SAC ¶¶ 62–63. These conclusory allegations, however, are insufficient to meet the stringent pleading standards of Rule 9(b) and the PSLRA.

Third, to the extent that Plaintiffs allege that Defendants were required to disclose that they terminated the PALISADE-2 trial because they lacked the funds to complete it, the August 7, 2023 press release discloses that Vistagen closed the PALISADE-2 trial because of "the expense, time and methodological complexities involved in resuming PALISADE-2." ECF 56-33 at 7. The SAC does not contain any particularized facts explaining why this disclosure was insufficient. *See Nektar*, 34 F.4th at 836. Although Plaintiffs may have wished for more specific disclosures regarding Defendants' funding of clinical trials, a mere desire for additional information is

insufficient to establish falsity. *See In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 880 n.8 (9th Cir. 2012) ("As long as the omissions do not make the actual statements misleading, a company is not required to disclose every safety-related result from a clinical trial, even if the company discloses some safety-related results and even if investors would consider the omitted information significant."); *see also Huang*, 2016 WL 6524401, at *8 (similar). To the extent that Plaintiffs seek to allege that other statements made by Defendants were false or misleading because they did not specifically state that Vistagen terminated the PALISADE-2 trial due to a lack of funding, the same logic applies. *See Rigel*, 697 F.3d at 880 n.8; *see also Huang*, 2016 WL 6524401, at *8. In short, federal securities laws do not impose any completeness rule requiring Defendants to reveal every piece of information that Plaintiffs wish had been disclosed, or to make disclosures that meet the level of specificity desired by Plaintiffs. *See Rigel*, 697 F.3d at 880 n.8; *see also Huang*, 2016 WL 6524401, at *8. Therefore, Plaintiffs fail to adequately plead that any of Defendants' purported misstatements were false or misleading when made.

**2. Scienter, Loss Causation, and Standing**

Because Plaintiffs have failed to adequately plead falsity, the Court need not consider whether Plaintiffs have adequately pled scienter or loss causation. *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1188 (9th Cir. 2021) ("[W]e find the issue of falsity to be dispositive, and we therefore do not reach the issues of scienter or loss causation with respect to that complaint."). Likewise, Defendants' standing argument is moot because Plaintiffs have failed to adequately plead that Defendants made any false or misleading misstatements. *Cf. In re Solarcity Corp. Sec. Litig.*, 274 F. Supp. 3d 972, 1007–08 (N.D. Cal. 2017) (declining to reach the issue of standing, where challenged statements were otherwise inactionable).

**ii. Plaintiffs Fail to Plead a Viable Scheme Liability Claim Under Rule 10b-5(a) and (c).**

"A scheme liability claim can be based on misstatements that also violate section 10(b), *see Lorenzo v. Securities and Exchange Comm'n.*, 587 U.S. 71, 80 (2019), but where the alleged scheme consists entirely of failed section 10(b) misstatements, plaintiffs likewise fail to adequately plead a scheme." *Petersen*, 2024 WL 4602710, at *12 (citation and internal quotation marks omitted)). "Further, as the Ninth Circuit has held, '[c]onduct that is consistent with the defendants' normal course of business would not typically be considered to have the purpose and effect of creating a misrepresentation,' and thus, standing alone, does not suffice to plead scheme liability." *See id.*

Plaintiffs allege that Defendants have engaged in a years-long scheme to artificially inflate Vistagen's stock price and have perpetrated a pump-and-dump scheme. SAC ¶¶ 6, 63. According to Plaintiffs, Defendants purportedly engaged in a scheme to: (1) do a reverse stock split; (2) issue a prospectus to sell shares of Vistagen stock; (3) issue a misleading press release characterizing PALISADE-2's clinical trial results as positive; and (4) begin selling Vistagen shares. SAC ¶ 63.

Defendants argue that Plaintiffs' scheme liability claims fail because they are based on the same purported misstatements that give rise to Plaintiffs' Section 10(b) claims. ECF 56 at 26. Although Plaintiffs attempt to argue otherwise (ECF 59 at 7–9), the alleged Section 10(b) misstatements were an integral part of Defendants' purported schemes (SAC ¶ 63). Simply put, if no misstatements were made, then no scheme could exist. *See* SAC ¶ 63. All Plaintiffs would be left with are allegations regarding clinical trial decisions and stock offerings that, by themselves, are not fraudulent conduct that could give rise to scheme liability. *See Petersen*, 2024 WL 4602710, at *12. Therefore, Plaintiffs' scheme liability claims fail for the same reasons as their Section 10(b) claims. *See id.*

**iii. Plaintiffs Fail to Adequately Allege Control Person Liability Under Section 20(a) of the Exchange Act.**

"In order to prove a prima facie case under [Section] 20(a), plaintiff must prove: (1) a

primary violation of federal securities laws . . . ; and (2) that the defendant exercised actual power or control over the primary violator . . . ." *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000). "Section 20(a) provides derivative liability for those who control others found to be primarily liable under the [Exchange] Act." *Kyung Cho v. UCBH Holdings, Inc.*, 890 F. Supp. 2d 1190, 1205 (N.D. Cal. 2012). "Where a plaintiff asserts a Section 20(a) claim based on an underlying violation of Section 10(b), the pleading requirements for both violations are the same." *Id.*

Plaintiffs cannot state a claim for control person liability under Rule 20(a) because they have failed to adequately allege a primary violation of the Exchange Act. *See In re Netflix, Inc. Sec. Litig.*, 647 F. App'x 813, 816 (9th Cir. 2016). Accordingly, Plaintiffs' Section 20(a) claim against Mr. Saxe fails.

The Court holds that Plaintiffs have failed to allege falsity. In addition, the Court holds that Plaintiffs have failed to adequately plead scheme liability or control person liability. Therefore, the Court **DISMISSES** Count XI of the SAC **WITHOUT LEAVE TO AMEND**.

### B. Plaintiffs Fail to Adequately Allege Any State Law Claims (Counts I–X, XII).

The SAC asserts various state law claims that are largely based on the same allegations as Plaintiffs' federal securities fraud claims. *See generally* SAC. These claims include: (1) common law fraud (Count I); (2) deceit (Count II); (3) deceit with intent to defraud the public (Count III); (4) constructive fraud (inadvertently listed as Count III); (5) concealment (Count IV); (6) intentional misrepresentation (Count V): (7) civil conspiracy to commit fraud (Count VI); (8) aiding and abetting (Count VII); (9) gross negligence (Count VIII); (10) violation of Section 25400 of the California Corporations Code (Count IX); (11) violation of Section 25401 of the California Corporations Code (Count X); and (12) breach of fiduciary duty (Count XII). SAC ¶¶ 157–81.

Counts I–VI, VII (to the extent that Plaintiffs assert a claim for aiding and abetting fraud), and IX–X all sound in fraud. Therefore, "Rule 9(b)'s heightened pleading standards" apply to these claims. *Davidson.*, 889 F.3d at 962, 964 (applying Rule 9(b) standard to common law fraud claim);

*Facebook, Inc. v. MaxBounty, Inc.*, 274 F.R.D. 279, 286 (N.D. Cal. 2011) ("[A] conspiracy to commit fraud must satisfy the particularity requirement of Rule 9(b).") (citation and internal quotation marks omitted); *Cesario v. Biocept, Inc.*, No. 23-CV-1803-WQH-BLM, 2025 WL 3687913, at *12 (S.D. Cal. Dec. 19, 2025) (applying Rule 9(b) standard to aiding and abetting fraud claim); *Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*, 998 F.3d 397, 403 (9th Cir. 2021) (applying Rule 9(b) standard to claim for violation of California Corporations Code Section 25400); *Siegal v. Gamble*, No. 13-CV-03570-RS, 2016 WL 3648503, at *4 (N.D. Cal. July 7, 2016) (applying Rule 9(b) standard to claim for violation of California Corporations Code Section 25401, where claim sounded in fraud).

Moreover, Rule 9(b) arguably applies to Counts VII (to the extent that Plaintiffs assert a claim for aiding and abetting breach of fiduciary duty) and Count XII. Both of these fiduciary claims are governed by Nevada law (*see, e.g.*, *Marino v. Huang*, No. CV 24-5830-JFW(MARX), 2025 WL 3902304, at *2–3 (C.D. Cal. Sept. 19, 2025) and are based on the same alleged misconduct that underlies Plaintiffs' fraud claims (*see generally* SAC). Accordingly, some district courts in this Circuit have held that Rule 9(b) applies to breach of fiduciary duty claims that are governed by Nevada law. *See Goodsell v. Tchrs. Health Tr.*, No. 2:23-CV-01510-APG-DJA, 2024 WL 2786386, at *4 (D. Nev. May 29, 2024) (applying Rule 9(b) standard to Nevada breach of fiduciary duty claim); *Miyayama v. Burke*, No. 2:20-CV-01683-DJA, 2022 WL 1665211, at *7 (D. Nev. May 25, 2022) (applying Rule 9(b) standard to Nevada aiding and abetting breach of fiduciary duty claim).

Count VIII is not subject to Rule 9(b)'s heightened pleading standards. *See In the Black Res., LLC v. Blitz Design, Inc.*, No. 3:22-CV-04227-WHO, 2022 WL 17082372, at *8–9 (N.D. Cal. Nov. 17, 2022) (dismissing gross negligence claim without applying any heightened pleading standard).

Below, the Court examines each of Plaintiffs' state law claims. First, the Court evaluates Plaintiffs' state law fraud claims and aiding and abetting claim, to the extent that Plaintiffs assert a claim for aiding and abetting fraud (Counts I–VII). Second, the Court assesses Plaintiffs' gross negligence claim (Count VIII). Third, the Court examines Plaintiffs' California Corporations Code claims (Counts IX–X). Fourth, the Court analyzes Plaintiffs' breach of fiduciary duty claim and

aiding and abetting claim, to the extent that Plaintiffs assert a claim for aiding and abetting breach of fiduciary duty (Counts VII, XII).

**i. Plaintiffs Fail to Plead Any Viable State Law Fraud Claims (Counts I–VII).**

Plaintiffs assert various state law fraud claims that have similar elements. SAC ¶¶ 158–69. The parties do not contest that these claims are governed by California state law. ECF 56 at 26–28; ECF 59 at 12–13; ECF 66 at 12–13. These claims all have similar elements and are often considered together. *See, e.g.*, *Cesario*, 2025 WL 3687913, at *9–10, *12 (considering common law fraud, deceit, and constructive fraud claims together and dismissing them without further leave to amend); *Amardeep Garments Indus. Pvt. Ltd. v. Cathay Bank*, No. CV 11-2849 AHM (RZX), 2012 WL 12886849, at *4–6 (C.D. Cal. Apr. 12, 2012).[13]

"The elements of fraud, which gives rise to the tort action for deceit, are (1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity; (3) intent to defraud, *i.e.*, to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Subhani v. JPMorgan Chase Bank, Nat. Ass'n*, No. C 12-01857 WHA, 2012 WL 1980416, at *9 (N.D. Cal. June 1, 2012); *Jackson v. Fischer*, 931 F. Supp. 2d 1049, 1067 (N.D. Cal. 2013) (reciting the same elements for fraud and intentional misrepresentation).

"[A] plaintiff alleging fraudulent concealment must plead: (1) concealment or suppression of a material fact; (2) by a defendant with a duty to disclose the fact to the plaintiff; (3) the defendant intended to defraud the plaintiff by concealing or suppressing the fact; (4) the plaintiff was unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact;

[13] The Court notes that Mr. Cesario was the plaintiff in *Cesario v. Biocept, Inc. See Cesario,* 2025 WL 3687913, at *1. *Cesario* involves similar facts and claims to those at issue in this action. *See id.* at *1–5. In *Cesario*, Mr. Cesario amended his complaint three times, but the Court ultimately denied further leave to amend. *Id.* at *12. Although the Court finds *Cesario* instructive at times because of certain factual similarities to this action, the Court does not give *Cesario* any undue weight or consideration.

United States District Court
Northern District of California

and (5) plaintiff sustained damage as a result." *Vigdor v. Super Lucky Casino, Inc.*, No. 16-CV-05326-HSG, 2017 WL 2720218, at *6 (N.D. Cal. June 23, 2017).

Constructive fraud requires a plaintiff to show: "(1) a fiduciary or confidential relationship; (2) nondisclosure; (3) intent to deceive; and (4) reliance and resulting injury (*i.e.*, causation)." *Subhani*, 2012 WL 1980416, at *10.

"To allege a conspiracy to commit fraud, a plaintiff must show: (1) the formation and operation of the conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from the wrongful conduct." *ESG Cap. Partners, LP*, 828 F.3d at 1039.

"To allege aiding and abetting [fraud], a plaintiff must show that the defendant knowingly: (1) substantially assisted or encouraged another to breach a duty, or (2) substantially assisted another's tort through an independently tortious act." *Id.*

Defendants argue that Plaintiffs' state law fraud claims fail for the same reasons as their Section 10(b) claim. ECF 56 at 26–28. Plaintiffs disagree and argue that they have pled the "who, what, when where, and how of Vistagen's misconduct" under Rule 9(b). ECF 59 at 12. Plaintiffs further argue that Rule 9(b) "may be relaxed with respect to matters within the opposing party's knowledge." ECF 59 at 12.

The Court acknowledges that Plaintiff's state law fraud claims are not subject to the PSLRA. *See ESG Cap. Partners, LP*, 828 F.3d at 1036. Moreover, in certain instances, the requirements of Rule 9(b) may be relaxed if a plaintiff is relying on an omissions-based theory wrongdoing. *Facebook, Inc.*, 274 F.R.D. at 285 (noting that Rule 9(b)'s pleading standards "may be relaxed when facts are peculiarly within the knowledge of the other party," but that "mere speculation and conclusory allegations are insufficient to state a claim"). Nonetheless, Plaintiffs fail to adequately explain why any of Defendants' purported statements or omissions were false or misleading when made. *Compare Davidson*, 889 F.3d at 964 (plaintiff adequately explained why statement that wipes were "flushable" was false, where plaintiff alleged that the wipes took hours to break down and

created a risk of damage to plumbing systems), *with Jackson*, 931 F. Supp. 2d at 1067 (plaintiff failed to allege facts explaining why statements were false when made). To the extent that Plaintiffs seek to allege any fraud claims based on Defendants' forward-looking statements, Plaintiffs fail to demonstrate that Defendants made any promises regarding future actions without any intent to perform. *See Guangdong Cell Biotechnology Ltd v. Sudhof*, No. 25-CV-08953-VKD, 2026 WL 2088003, at *11 (N.D. Cal. July 20, 2026) ("While a misrepresentation is generally only actionable if the misrepresentation concerns past or existing material facts, . . . a promise to do something in the future may constitute intentional misrepresentation if it was made without any intention to perform . . . . ") (citation and internal quotation marks omitted).

Plaintiffs simply provide a laundry list of information that they contend should have been disclosed, such as: (1) NLM returns of Vistagen's clinical trial results; (2) the location of certain PH94B trials; (3) that a certain study only included women; and (4) that the FDA had never approved a social anxiety drug based on a trial that used a SUDS methodology. *E.g.*, SAC ¶ 5. Plaintiffs presume that these purported omissions enabled Defendants to overstate PH94B's clinical potential. *E.g.*, SAC ¶ 5. However, Plaintiffs fail to plead any particularized facts explaining why these omissions would render any of Defendants' public statements fraudulent. *See Jackson*, 931 F. Supp. 2d at 1067. Instead, Plaintiffs ask the Court to engage in speculation. *See Facebook, Inc.*, 274 F.R.D. at 285. Thus, although the pleading standard is lower for Plaintiffs' state law fraud claims than for their Section 10(b) claim, Plaintiffs' conclusory allegations fail to show why Defendants' purported misstatements were false, misleading, or otherwise fraudulent. *See Facebook, Inc.*, 274 F.R.D. at 285.

To the extent that Plaintiffs seek to hold Mr. Saxe liable as a fiduciary for constructive fraud, aiding and abetting fraud, or other similar causes of action, Plaintiffs offer only conclusory allegations. *See Facebook, Inc.*, 274 F.R.D. at 285–86 (holding that conclusory allegations were insufficient to state a claim for conspiracy to commit fraud or aiding and abetting fraud). For

example, Plaintiffs rely on conclusory allegations that Mr. Saxe knowingly reviewed and approved false and misleading public statements. *See Cesario*, 2025 WL 3687913, at *10 (dismissing state law fraud claims and noting that it remained unclear what "specific roles that each Biocept Defendant [had] played with respect to [the] allegedly fraudulent conduct, except for signing statements filed with the SEC"). Plaintiffs similarly allege that Mr. Saxe knowingly signed false and misleading SEC filings. *See id.* These conclusory allegations fail to explain what role Mr. Saxe played in the purported fraud.

Accordingly, Plaintiffs fail to plead any state law fraud claims with particularity. *See* Fed. R. Civ. P. 9(b). Therefore, the Court **DISMISSES** Counts I–VI of the SAC **WITHOUT LEAVE TO AMEND**. The Court likewise **DISMISSES** Count VII of the SAC **WITHOUT LEAVE TO AMEND**, to the extent that Plaintiffs assert a claim for aiding and abetting fraud.

**ii. Plaintiffs Fail to Plead a Viable Gross Negligence Claim (Count VIII).**

"To plead a claim for gross negligence, a plaintiff must allege the traditional elements of negligence: duty, breach, causation, and damages, as well as extreme conduct on the part of the defendant." *In the Black Res., LLC*, 2022 WL 17082372, at *8 (citation and internal quotation marks omitted); *see also Molina v. J.C. Penney Co., Inc.*, No. C-14-04201-DMR, 2015 WL 183899, at *2 (N.D. Cal. Jan. 14, 2015). "Such extreme conduct involves either a want of even scant care or an extreme departure from the ordinary standard of conduct." *In the Black Res., LLC*, 2022 WL 17082372, at *8 (citation and internal quotation marks omitted); *Molina*, 2015 WL 183899, at *2.

Construed liberally, the SAC appears to allege that Defendants "were grossly negligent and reckless [in] initiating the PH94B trials during peak COVID-19." SAC ¶ 170. Plaintiffs further argue that Defendants were grossly negligent because they proceeded with PH94B Phase 3 clinical trials despite knowing that the NLM returned their trial results after a limited QC review. ECF 59 at 16. By contrast, Defendants argue that Plaintiffs have "fail[ed] to allege any of the elements of the claim, let alone that the alleged conduct represented an 'extreme departure' from any standard." ECF 56 at 29. The Court agrees that Plaintiffs have failed to adequately allege any "extreme

conduct." *In the Black Res., LLC*, 2022 WL 17082372, at *8.

The SAC is devoid of non-conclusory allegations that would transform Defendants' ordinary business decision to proceed with PH94B Phase 3 trials during the COVID-19 pandemic into extreme conduct. *See In the Black Res., LLC*, 2022 WL 17082372, at *8 (dismissing gross negligence claim due to complaint's failure "to provide allegations showing extreme conduct," where allegations were conclusory) (citation and internal quotation marks omitted). Plaintiffs fail to cite a single case in support of their argument that they have stated a claim for gross negligence. *See generally* ECF 59; ECF 61; ECF 69. Moreover, Plaintiffs' apparent belief that Defendants' business decision was imprudent fails to demonstrate a "want of even scant care" or an "extreme departure from the ordinary standard of conduct." *See In the Black Res., LLC*, 2022 WL 17082372, at *8 (citation and internal quotation marks omitted).

Nor does the SAC contain any non-conclusory allegations showing that Defendants engaged in extreme conduct because they proceeded with Phase 3 PH94B trials despite the NLM's prior returns of their clinical trial results. *See Molina*, 2015 WL 183899, at *3 (dismissing gross negligence claim for failure to plead extreme conduct, where plaintiffs alleged that store "employees knew that there was merchandise on the floor, but left it there for hours before Molina tripped on it"). The SAC itself admits that "NLM staff do not verify the scientific validity or relevance" of the information submitted by pharmaceutical companies. SAC ¶ 103. Particularly in light of this admission, the SAC's allegations do not allow the Court to plausibly infer that Defendants' decision to proceed with Phase 3 PH94B trials constituted "extreme conduct." *Molina*, 2015 WL 183899, at *2–3.

Therefore, the Court **DISMISSES** Count VIII of the SAC **WITHOUT LEAVE TO AMEND**.

**iii. Plaintiffs Fail to Plead a Viable Claim for Violation of California Corporations Code §§ 25400 and 25401 (Counts IX–X).**

Under Section 25400 of the California Corporations Code, "it is unlawful in [California] to make false statements or engage in specified fraudulent transactions which affect the market for a security when done for the purpose of inducing purchase or sale of the security or raising or

depressing the price of the security." *Kamen v. Lindly*, 94 Cal. App. 4th 197, 201–02 (2001). Simply put, Section 25400 "prohibits market manipulation." *Id.* at 202. Section 25500 creates a civil cause of action for violations of Sections 25400. *Id.*

"[S]ection 25401 of the California Corporations Code makes it unlawful for any person to offer or sell a security in [California], or to buy or offer to buy a security in [California], by means of any written or oral communication that includes an untrue statement of a material fact or omits to state a material fact necessary to make the statements made, *in the light of the circumstances under which the statements were made*, not misleading." *Kalin v. Semper Midas Fund, Ltd.*, No. 4:21-CV-01062-YGR, 2022 WL 16935782, at *3 (N.D. Cal. Oct. 12, 2022) (citation and internal quotation marks omitted), *aff'd*, No. 22-16766, 2023 WL 8821325 (9th Cir. Dec. 21, 2023). Section 25501 creates a civil cause of action for violations of Section 25401. *Id.* at *3 n.4. "Sections 25401 and 25501 impose liability only on the actual seller of the security." *Jackson*, 931 F. Supp. 2d at 1063. Put differently, a defendant is only liable for violations of Section 25401 if he personally sold securities to the plaintiff. *See id.*

Defendants argue that Plaintiffs' California Corporations Code claims fail for the same reasons as their Section 10(b) claim. ECF 56 at 30. In addition, Mr. Saxe argues that Plaintiffs' Section 25401 claim fails because Plaintiffs do not plead that he sold them any securities. ECF 66 at 13–14. Plaintiffs do not address their California Corporations Code in their motion to dismiss briefing. ECF 59; ECF 61; ECF 69. Accordingly, Plaintiffs have effectively abandoned these claims. *CyboEnergy, Inc. v. N. Elec. Power Tech., Inc.*, 721 F. Supp. 3d 1050, 1055 (N.D. Cal. 2024) ("Where a plaintiff simply fails to address a particular claim in its opposition to a motion to dismiss that claim, courts generally dismiss it with prejudice.") (citation and internal quotation marks omitted).

In addition, Plaintiffs' California Corporations Code claims fail on the merits. The SAC lacks particularized allegations that would allow the Court to infer that Defendants made any false

or misleading statements. *See Wallack v. Idexx Lab'ys, Inc.*, No. 11CV2996-GPC KSC, 2013 WL 5206190, at *11–12 (S.D. Cal. Sept. 12, 2013) (dismissing claim for violation of 25401 with prejudice, where plaintiff also failed to plead falsity with respect to his federal securities fraud claim under Section 10(b) and Rule 10b-5). In short, Plaintiffs' California Corporations Code claims suffer from the same pleading deficiencies as their Section 10(b) and state law fraud claims. *See id.* Separately, Plaintiffs fail to state a Section 25401 claim against Mr. Saxe because they do not allege that he personally sold or offered to sell them any securities. *Jackson*, 931 F. Supp. 2d at 1064 (dismissing claim for violation of 25401 with prejudice unless plaintiff could establish that defendants "sold the securities in question");

Accordingly, the Court **DISMISSES** Counts IX and X of the SAC **WITHOUT LEAVE TO AMEND**.

**iv. Plaintiffs Fail to Plead a Viable Claim for Breach of Fiduciary Duty (Count VII XII).**

As a threshold matter, Plaintiffs and Mr. Saxe dispute whether California or Nevada law applies to Plaintiffs' breach of fiduciary duty and aiding and abetting breach of fiduciary duty claims (to the extent such a claim is asserted) against Mr. Saxe. *See* ECF 66 at 14; ECF 69 at 11–12. Accordingly, the Court must determine whether California or Nevada law applies. In this action, Plaintiffs invoke federal question jurisdiction based on their federal securities claims. SAC ¶ 13. Plaintiffs presumably seek to invoke diversity jurisdiction or supplemental jurisdiction with respect to their fiduciary duty claims. Therefore, the Court must apply California's choice of law rules to determine whether Nevada law or California law applies to these claims. *See In re Verisign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173, 1214 (N.D. Cal. 2007).

California courts generally follow the "internal affairs" doctrine. *See id.* Under this doctrine, California courts "appl[y] the law of the state of incorporation to claims against a corporation and its directors related to a corporation's relationship to its shareholders." *Marino*, 2025 WL 3902304,

United States District Court
Northern District of California

at *2 (citation and internal quotation marks omitted). Fiduciary duty claims generally fall within the scope of the internal affairs doctrine, unless an exception applies. *Id.* at *2–3. Because Vistagen is incorporated in Nevada, Nevada law will govern Plaintiffs' fiduciary duty claims unless an exception applies. *See id.* at *3 (concluding that Nevada law governed state law claims that fell within the scope of the internal affairs doctrine).

Here, Plaintiffs argue that California law applies because Vistagen is a pseudo-foreign corporation under California Corporations Code § 2115. ECF 69 at 11–12. However, as Mr. Saxe points out, Section 2115 does not apply to publicly-traded corporations such as Vistagen. Cal. Corp. Code § 2115(c) (noting that statute does not apply to corporations "with outstanding securities listed on the New York Stock Exchange, the NYSE American, the NASDAQ Global Market, or the NASDAQ Capital Market.").[14] Likewise, Mr. Saxe notes that Section 2115 only applies if "(1) [t]he average of the property factor, the payroll factor, and the sales factor (as defined in . . . the Revenue and Taxation Code) with respect to [the corporation] is more than 50 percent during its latest full income year and (2) more than one-half of its outstanding voting securities are held of record by persons having addresses in [California]. . . ." ECF 68 at 6 (quoting Cal. Corp. Code § 2115(a)). Plaintiffs fail to adequately plead that Vistagen meets these requirements. Thus, Nevada law applies to Plaintiffs' breach of fiduciary duty claim against Mr. Saxe. *See Marino*, 2025 WL 3902304, at *3.

To state a claim for breach of fiduciary duty, Plaintiffs must adequately allege that (1) Mr. Saxe "owed them a fiduciary duty, (2) he breached that duty, and (3) they were damaged as a result." *Goodsell*, 2024 WL 2786386, at *4. Under Nevada law, corporate directors and officers such as Mr. Saxe "are presumed to act in good faith, on an informed basis and with a view to the interests of the corporation." Nev. Rev. Stat. § 78.138(3). "In Nevada, directors and officers owe the

[14] Vistagen's stock trades on the NASDAQ Capital Market. SAC ¶ 33.

fiduciary duties of care and loyalty to the corporation." *Banq, Inc. v. Purcell*, No. 2:22-CV-00773-APG-DJA, 2025 WL 2163327, at *10 (D. Nev. July 29, 2025) (citation and internal quotation marks omitted). "Under NRS § 78.138(7), "to state a claim against [directors or officers] individually, the [plaintiff] must allege facts that when taken as true (1) rebut the business judgment rule, and (2) constitute a breach of a fiduciary duty involving intentional misconduct, fraud or a knowing violation of law." *Id.*

Mr. Saxe argues, among other things, that Plaintiffs have failed to plead any non-conclusory facts "sufficient to demonstrate a breach of fiduciary duty involving intentional misconduct, fraud, or another knowing violation of the law." ECF 66 at 16 (internal quotation marks omitted).[15] Plaintiffs disagree and argue that they have pled facts demonstrating that Mr. Saxe "knew of material facts that were concealed from investors" and "approved corporate disclosures containing misleading statements and omissions." ECF 69 at 14.

The Court agrees with Mr. Saxe. Construed liberally, the SAC relies on conclusory allegations that Mr. Saxe "reviewed and approved every press release, SEC filing, and corporate presentation that contained the materially misleading statements and omissions" and knowingly signed SEC filings containing false and misleading statements. SAC ¶¶ 141, 143. In short, Plaintiffs argue that Mr. Saxe must have known his conduct was wrongful because of his position on Vistagen's Board. *See* ECF 69 at 12–15. Plaintiffs' conclusory allegations, however, fail to establish that Mr. Saxe engaged in conduct involving "intentional misconduct, fraud or a knowing violation of law." *See In re Amerco Derivative Litig.*, 127 Nev. 196, 223, 225 (2011) ("[S]imply alleging that the public filings did not contain enough information . . . does not demonstrate that respondents engaged in intentional misconduct or fraud.") (citation and internal quotation marks

[15] The Court declines to consider Mr. Saxe's other arguments and need not decide whether Plaintiffs' breach of fiduciary duty claim is direct or derivative. ECF 66 at 14–16.

omitted). Moreover, for the reasons explained above, Plaintiffs have not alleged that Mr. Saxe made any false or misleading statements to investors, or that they otherwise committed any fraud, intentional misconduct, or other violations of the law.

Nor do Plaintiffs adequately allege a claim for aiding and abetting breach of fiduciary duty against Mr. Saxe. To state a claim for aiding and abetting breach of fiduciary duty under Nevada law, a plaintiff must adequately allege that: "(1) a fiduciary relationship exists; (2) the fiduciary breached the fiduciary relationship; (3) the third party knowingly participated in the breach; and (4) the breach of the fiduciary relationship resulted in damages." *Miyayama*, 2022 WL 1665211, at *6. As Mr. Saxe points out, the SAC's conclusory allegations fail to show that any breach of fiduciary duty occurred, or that Mr. Saxe knowingly participated in any breaches of fiduciary duty (ECF 66 at 13). *Paradise Ent. Ltd. v. Empire Tech. Grp. Ltd.*, No. 2:24-CV-428 JCM (BNW), 2026 WL 776741, at *7 (D. Nev. Mar. 19, 2026) (dismissing Nevada aiding and abetting breach of fiduciary claim, where plaintiffs failed to "clarify how each defendant aid[ed] or abetted the other, beyond conclusorily alleging that they did").

Accordingly, to the extent that Count VII of the SAC asserts a claim for aiding and abetting breach of fiduciary duty, the Court **DISMISSES** it **WITHOUT LEAVE TO AMEND**. The Court also **DISMISSES** Count XII of the SAC **WITHOUT LEAVE TO AMEND**.

**C. Leave to Amend Would be Futile.**

In the Ninth Circuit, "leave to amend is to be freely granted when justice so requires." *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1038 (9th Cir. 2002). The Court further notes that this policy is applied with "extreme liberality" in the Ninth Circuit, particularly with respect to federal securities fraud claims. *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051–52 (9th Cir. 2003) (citation omitted). However, if further amendment would be futile, the Court may dismiss a complaint with prejudice and without leave to amend. *See Lipton*, 284 F.3d at 1039 (affirming denial of leave to amend in securities fraud action where amendment would have been futile).

Here, the Court finds that further amendment would be futile. Plaintiffs have already amended their complaint twice and have failed to plead any viable claims. *See Nguyen*, 962 F.3d at 420 ("[W]here the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, the district court's discretion to deny leave to amend is particularly broad.") (citation and internal quotation marks omitted). In addition, Plaintiffs confirmed at oral argument that the SAC basically covers all of the Defendants' purported misconduct.

With respect to Plaintiffs' Section 10(b) claim, Plaintiffs rely on a theory of falsity that finds no support in Ninth Circuit case law. *See Rigel*, 697 F.3d at 880 n.8; *Weston Fam. P'ship LLLP*, 29 F.4th at 615. Plaintiffs identify a list of purported omissions and ask the Court to speculate that these omissions are sufficient to constitute securities fraud. *E.g.*, SAC ¶ 5. In short, Plaintiffs' allegations amount to nothing more than a desire for additional information. This is not a cognizable theory of securities fraud. *See Rigel*, 697 F.3d at 880 n.8; *Weston Fam. P'ship LLLP*, 29 F.4th at 615. Nor do Plaintiffs plead a viable scheme liability claim.[16] Moreover, because Plaintiffs fail to allege a primary violation of the Exchange Act, Mr. Saxe cannot be held liable as a controlling person under Section 20(a). *See Netflix*, 647 F. Apap's at 816.

Even under the lower pleading standards for Plaintiffs' state law fraud claims, Plaintiffs rely on conclusory allegations and ask the Court to speculate that certain purported omissions enabled Defendants to overstate PH94B's clinical potential to investors. *See generally* SAC. For example, Plaintiffs assert that Defendants engaged in fraud because they failed to disclose that Vistagen's clinical trial results were returned by the NLM after a limited QC review. *E.g.*, SAC ¶¶ 5, 8, 11–

[16] Plaintiffs' statement liability allegations are central to their scheme liability claim. *E.g.*, SAC ¶ 63. Accordingly, further amendment would be futile with respect to Plaintiffs' scheme liability claim for the same reasons that amendment would be futile with respect to their state law fraud claims, which are discussed below.

12, 15, 48, 53, 57, 63, 65–67, 75, 77–78, 82, 90–96, 100–07. Nonetheless, the SAC expressly admits that NLM staff "do not verify the scientific validity or relevance" of the information they receive. SAC ¶ 103. In light of this foundational logical contradiction, the Court cannot infer that Defendants were required to disclose these NLM staff determinations.

Similarly, Plaintiffs' allegations that Vistagen's August 7, 2023 announcement of positive top-line results from the PALISADE-2 trial were false and misleading is belied by the press release itself. *See Weston Fam. Pushup LLLP*, 29 F.4th at 622. Plaintiffs argue that the August 7, 2023 8-K and accompanying press release were false and misleading because Defendants did not describe the trial results as interim and did not state that Vistagen terminated the trial because it lacked the funds to complete it. SAC ¶¶ 9–10, 68. This theory of fraud fails because the press release discloses that Vistagen closed the PALISADE-2 trial "given the expense, time and methodological complexities involved in resuming PALISADE-2." ECF 56-33 at 7. Because the trial was over, the results were not "interim" results. ECF 56-33 at 7. Similarly, the press release specifically stated that the PALISADE-2 trial was terminated, at least in part, due to the expenses involved. ECF 56-33 at 7. Thus, Plaintiffs' desire to wordsmith the August 7, 2023 press release cannot give rise to a state law fraud claim.

These examples demonstrate that the SAC's state law fraud claims contain basic logical deficiencies that cannot be cured by amendment. *See Wallack*, 2013 WL 5206190, at *13 ("Plaintiff has been give[n] two opportunities and has failed to allege a cause of action for intentional misrepresentation/fraudulent concealment. Therefore, the Court concludes that any further amendments would be futile.").

With respect to Plaintiffs' gross negligence claim, Plaintiffs seek to transform ordinary business decisions, such as Vistagen's decision to proceed with PH94B SAD trials during the COVID-19 pandemic into "extreme conduct" that constitutes gross negligence. *Cf. Molina*, 2015 WL 183899, at *2–3 (granting motion to dismiss, where there was no extreme conduct that could

United States District Court
Northern District of California

give rise to gross negligence claim). Plaintiffs' theory of wrongdoing finds no support in the facts or the law. Similarly, Plaintiffs' reliance on Defendants' allegedly false and misleading public statements fails for the same reasons discussed above. In short, Plaintiffs cannot plead that any conduct committed by Defendants could give rise to extreme conduct, which is an essential element of a gross negligence claim.

Regarding Plaintiffs' California Corporations Code claims, amendment would be futile because: (1) Plaintiffs abandoned those claims by failing to discuss them in their motion to dismiss briefing; and (2) Plaintiffs' allegations of falsity rest on basic logical deficiencies that cannot be cured by amendment. *See CyboEnergy, Inc.*, 721 F. Supp. 3d at 1055; *Wallack*, 2013 WL 5206190, at *12.

Nor can Plaintiffs plead any claim against Mr. Saxe for breach of fiduciary duty or aiding and abetting breach of fiduciary duty. Under Nevada law, both claims sound in fraud. *See Goodsell*, 2024 WL 2786386, at *4; *Miyayama*, 2022 WL 1665211, at *7. Thus, for all the reasons stated above, Plaintiffs' allegations are illogical, conclusory, and incurably deficient.

The Court does not dismiss Plaintiffs' SAC without leave to amend lightly. However, because the SAC's allegations of falsity and misconduct rest on fundamental logical deficiencies, the Court concludes that further amendment would be futile.[17]

Therefore, the Court **DISMISSES** the Second Amended Complaint in its entirety **WITH PREJUDICE** and **WITHOUT LEAVE TO AMEND**.

[17] The Court further notes that Plaintiffs are pursuing a stockholder derivative action on behalf of Vistagen in the District of Nevada. Although Plaintiffs are currently proceeding *pro se* in that action, they could engage counsel and seek recovery on Vistagen's behalf in that forum. The Court further notes that other stockholder litigation is being pursued against Vistagen and Mr. Saxe in this District. Although these other litigations are not relevant to the Court's decision to deny leave to amend, the Court points out that there are other paths by which Defendants can be held liable for any purported misconduct they may have committed.

United States District Court
Northern District of California

## VI. CONCLUSION

For the foregoing reasons, the Court holds that Plaintiffs fail to adequately allege that Defendants made any false or misleading statements or omissions or otherwise engaged in other misconduct. Because the Second Amended Complaint contains fundamental logical gaps, the Court concludes that further amendment would be futile. Therefore, the Court **DISMISSES** the Second Amended Complaint in its entirety **WITH PREJUDICE**. As such, the Motion for Summary Judgment is **MOOT**. ECF 88, 96.

This resolves ECF 56, 66, 88, and 96. The Clerk is directed to close and terminate this action. All future dates are hereby vacated. ECF 40, 90.

IT IS SO ORDERED.

Dated: August 11, 2026

TRINA L. THOMPSON
United States District Judge